C. W. DAY, Appellant, v. SOL DYER et al, Appellees.

ACTION: **Law and Equitable Issues Combined—Transfer to Equity —Waiver of Trial at Law.** When, in an action involving law and equitable issues, the equitable issue is properly on trial before the equity court and *may* be determinative of the entire controversy, a motion, made before the close of *all* the evidence, to separate the issues and for a law trial on the law issue, is premature and, such motion being overruled, a failure to renew it at the close of *all* the evidence works a waiver of any objections to the entire case being tried to the court.

PRINCIPLE APPLIED: Plaintiff brought his action at law, presenting the simple law proposition that defendants had wrongfully torn down and removed plaintiff's barn. Defendants claimed the barn was personal property and belonged to them. During the trial, plaintiff amended and shifted his position by setting up a deed to the land from defendants and planting his right to damages on the covenants of warranty. Defendants countered with a pleading that the insertion of the covenant was by mutual mistake of the parties, prayed reformation, and moved that the equitable issue be transferred to the equity calendar. This motion was sustained. At the close of defendants' evidence on the equitable issue, plaintiff moved that the issues be separated and, if reformation was denied, to transfer the law issue on damages to the law calendar for trial. Motion was overruled. Plaintiff then introduced his evidence on the equitable issue, but did not again renew his said motion. The court denied reformation but decided the entire matter by holding that the barn was personal property. *Held,* the motion was prematurely made and the failure to renew it at the close of all the

evidence worked a waiver of the objection to the court's trying the entire case.

**TRESPASS: Basis for Recovery—Shifting Ground.** One cannot recover damages on the theory of a trespass when his claim is distinctly based on another ground, to wit, a breach of warranty.

**ACTIONS: Law and Equitable Issues Intermingling—Equitable Controlling—Trial by Court.** An equitable issue, even though injected by defendant into an action originally brought at law by plaintiff, if determinative of the entire controversy, is full justification for the court's determining the entire matter on such equitable issue.

PRINCIPLE APPLIED: (See under No. 2.)

**REFORMATION OF INSTRUMENTS: Mutual Intention Frustrated Through Mutual Mistake—Sufficiency of Showing.** Mutual mistake frustrating mutual intention establishes right to reformation.

PRINCIPLE APPLIED: Defendants Seibers conveyed land to plaintiff. Later, a barn was removed from the premises by one Dyer who claimed the barn was his personal property. Plaintiff sued the Seibers for damages under the covenants of warranty of his deed. Defendants pleaded mutual mistake in inserting the covenants and prayed for reformation. The farm once belonged to an estate and was passing through partition. Both plaintiff and defendants desired a part of the land. The referee desired to avoid the making of two deeds. The three agreed that the referee would report that he had sold all the land to defendants and deed accordingly, and then defendants could deed to plaintiff the portion going to him. This was done. Plaintiff and defendants, separately, paid the referee for their respective portions, but defendants received deed to all and then deeded to plaintiff the portion going to plaintiff. In this deed, the ordinary covenants of warranty were inserted, followed by the words "claiming by, through, or under us," which clause was inserted by the notary in the notion to make it a special warranty, and to carry no greater title than was carried by the referee's deed. The referee told plaintiff he was not selling the barn and that Dyer claimed it. In truth, neither party expected the deed to carry the barn. *Held,* reformation should have been granted.

*Appeal from Boone District Court.*—HON. R. M. WRIGHT. Judge.

THURSDAY, APRIL 8, 1915.

REHEARING DENIED SATURDAY, OCTOBER 2, 1915.

THIS action was brought at law by plaintiff to recover the value of a certain barn on the premises of appellant, which was torn down by the defendants and moved off plaintiff's land about February 10, 1912. The petition alleged that defendants acted wilfully, and plaintiff asked exemplary damages also. Trial was commenced to a jury and, after plaintiff had rested, the defendants filed an amendment to their answer, setting up an equitable issue, claiming that the warranty in the deed from the two Seibers to plaintiff did not express the true contract, and asking that the same be modified in form by reason of mutual mistake; that the court decree that the defendants made no covenants to the plaintiff as expressed in said deed; that a reservation of the barn in controversy be added to the same, and asking a reformation of the deed. Defendants moved to transfer the equitable issues presented by the amendment, and the motion was sustained; a transfer was had for such purpose to the equity side. We assume that the jury was discharged, although the record does not so show. This transfer was made on October 8, 1912, and up to that time, the hearing had been before Judge Albrook. Later, and on November 27th, the cause came on for trial before Judge Wright. At the close of the evidence of defendants, plaintiff moved to separate the trial of the issues of this cause into two parts, and moved the court to first hear and determine the question as to the reformation of the deed, and then, if the reformation of the deed is denied, that the issue as to damage caused by the removal of the barn be determined as a law issue. This was resisted by defendants on the ground, among others, that the court could not

then split the case up and compel the parties to be to the expense of two separate trials. Plaintiff's motion was denied. Plaintiff then offered his evidence in rebuttal. By its final decree, the trial court found that the barn in question was personal property, and that plaintiff had notice of that fact, and that, therefore, plaintiff was not entitled to recover. The court also found that defendants were not entitled to a reformation of the deed, and dismissed the equitable issue presented by the amendment to the answer. The costs were taxed to plaintiff, subject to prior orders in reference to costs. Both parties have appealed.—*Affirmed.*

*Goodykoontz & Mahoney,* for appellant.

*Whitaker & Snell* and *D. G. Baker,* for appellees.

Preston, J.—Plaintiff, having first perfected his appeal, is the appellant. The appellant and appellees have each filed an abstract setting out the evidence and proceedings on each appeal. Though largely questions of fact are presented as to the merits, we shall not attempt to set out the evidence at any length. It would be impracticable to do so. Twenty-eight pages of the abstracts are taken up with printing the pleadings and the several amendments thereto.

1. We shall first refer to the point made by plaintiff and the alleged error in overruling his motion to separate and try some of the issues at law. It will be necessary to refer more in detail to the pleadings, and the state of the record at the time of the ruling by Judge Albrook to try the equitable issues as in equity, and the ruling of Judge Wright, at the conclusion of the evidence of defendants, on plaintiff's motion to separate and try some of the issues at law.

The petition alleged that plaintiff was the owner of the real estate described, but did not refer to or set out his

warranty deed from the two Seibers. The Seibers filed a separate answer, in which they admitted that plaintiff was, on February 10, 1912, the owner of the premises described in his petition, but denied that he was the owner of all the buildings thereon; alleged that, at a time prior to the time that plaintiff became the owner of the premises described in his petition, one General Huffman owned five acres square south of the other one hundred and twenty acres purchased by plaintiff and, while the owner of said premises, said Huffman erected near his south line a barn and other improvements; that if any part of said buildings were located across the south line of said premises then owned by said Huffman, the same were so erected with the knowledge of the then owner of said premises now claimed by plaintiff, and with the express agreement with said owner, verbally made, that said Huffman might erect said buildings across his south line on the adjoining premises, and that he might have the right to remove the buildings at any time; that said agreement was with the mother of said Huffman, who was then the owner of the premises south; that afterwards said General Huffman sold the five acres to defendant Dyer, including all the buildings erected south of his south line upon the premises of Huffman's mother; that afterwards, and in 1912, defendant Dyer sold said five acres to the Seibers, and also what buildings there were erected by General Huffman south of the line, and particularly the barn which plaintiff claims defendants tore down; that the Seibers were the owners of the barn, and that the same was never the property of plaintiff; was never a part of the real estate of plaintiff, but was personal property; and that plaintiff had full knowledge and notice of that fact when he purchased the land. Substantially the same matters were set up by defendant Dyer in his separate answer. Amendments were filed to the petition and the answers, setting up matters not material to the point being now considered.

1. ACTION: law and equitable issues combined: transfer to equity: waiver of trial at law.

On October 7, 1912 (abstract states that it was in 1913), and during the trial, or that part of it which was had before Judge Albrook, plaintiff filed an amendment to his reply, in which he set up a copy of the warranty deed to the premises described in plaintiff's petition, and alleged that the premises were conveyed to plaintiff without reservation, and that defendants are estopped to assert as against plaintiff anything in derogation to the recitals thereof; and at the same time plaintiff filed an amendment to his petition, alleging that he became the owner of the premises by warranty deed from the Seibers. This deed was executed in 1911.

The cause then proceeded to trial on October 7th and 8th, 1912, before Judge Albrook, and a jury was impaneled; after the testimony of plaintiff had been offered, defendants filed an amendment to their answer, setting up the equitable matter before referred to. This amendment recited that it was made at the close of plaintiff's evidence, and upon the introduction of the warranty deed; alleged that the deed did not state the true contract and agreement; that in truth the Seibers made no covenants of warranty as expressed in the deed; that the Seibers did not convey all the land named in the deed to the plaintiff, but that at the time the conveyance was made, there was pending an action in partition entitled Huffman v. Huffman et al., in which a decree had been entered ordering the partition of the land named in the deed, and other lands, by the sale of the same; that one Crooks was appointed sole referee to sell; that before said deed was made, Crooks, as referee, agreed to sell to plaintiff the land described in the deed, and agreed to sell to defendants, the Seibers, the balance of the real estate so partitioned; that the referee desired to report only one sale and not make two referee's deeds, and that he induced the Seibers to take a referee's deed to all of said premises, but to become in fact, the owner of only a part of it, and that plaintiff receive a deed from the Seibers for the portion he had purchased from the referee, which was done; that defendants, the Seibers, received no

consideration from the plaintiff; that the purchase price was paid to the referee, and not to defendants; that the deed was only made to accommodate and assist plaintiff in purchasing the premises of the referee; that prior to the execution of the deed, it was known by the referee and by plaintiff and defendants that the barn in question was only upon the premises by sufferance, and that the same was the property of Dyer.

Plaintiff moved to strike the amendment because filed too late, and because irrelevant to the issues as made. This motion to strike was overruled. The defendants' motion to transfer the equitable issues presented by such amendment was then sustained, and the transfer was made for such purpose, as recited in the order set out in the abstract. To this order, the plaintiff excepted.

On November 25, 1912, and nearly two months after the ruling transferring the equitable issues, plaintiff filed a reply to this amendment, denying that defendants were entitled to a reformation or modification of the deed. On November 27, 1912, the hearing was taken up before Judge Wright.

It will be observed that there was no occasion for the defendants to plead a reformation of the deed until plaintiff had set up the deed in his reply, and had amended his petition in that respect; this deed was so set up during the trial before Judge Albrook.

The defendants' amendment to answer did set up equitable issues, and, so far as such issues were concerned, it was proper for the trial court to transfer such issues to the equity side, and this is all that was done. The order does not purport to transfer the entire case, as we understand it. The plaintiff's exception was only to the order transferring the equitable issues, and, as stated, the order was proper at that time and to that extent, so that the exception thereto would not be well taken. After defendants had put in their evidence on the equitable issue, but before plaintiff had introduced his evidence in rebuttal on that point, plaintiff made his motion to separate the issues, which has been heretofore referred

to. The motion was overruled, and the parties proceeded to, and did, put in all the evidence. After the evidence was all in, plaintiff made no further request for a separate trial of the legal and equitable issues. At the time the motion was made, it could not be determined whether defendants' equitable issue would be sustained or not. If it should be, it would end the controversy, and there would have been no occasion for a trial of the law issue.

It seems to the writer that, under the peculiar situation shown by the record in this case, there was no error in overruling plaintiff's motion; that the motion was premature, and that plaintiff waived any objection he might have had to the entire case being tried to the court by not objecting and without renewing his motion when the evidence was all in, and when the issues raised by the defendant in its equitable answer could be determined. As bearing somewhat upon this proposition, see *Kamrar v. Butler*, 164 Iowa 293.

Appellant at this point cites and relies on Code Sec. 3434 and the case of *Fisher v. Trumbauer*, 160 Iowa 255. The statute referred to provides, in substance, that where plaintiff has adopted the wrong proceedings, the defendant may have the correction made by motion at or before filing answer. In the *Fisher* case, plaintiff brought his suit in equity. The equities were not proven, and the trial court dismissed the cause and relegated the parties to an action at law. This was held to be error because Sec. 3432 of the Code provides that an error of the plaintiff as to the kind of proceedings adopted shall not cause the abatement or dismissal of the action, but merely a change into the proper proceedings and a transfer to the proper docket. In the present case, the trial court did not dismiss the action, but did proceed to determine the entire matter.

In certain cases, the proof rather than the allegations in the pleadings control, as stated in *Fisher v. Trumbauer, supra.* Even though this be true, when the proof is all in,

nevertheless the pleadings must control up to a certain stage in the trial.

We agree with the trial court that the weight of the evidence shows that, as between plaintiff and defendants, the barn was personal property. The evidence is without substantial dispute, we think, that the barn, when built, was personal property as between Huffman, who built the barn, and his mother, the owner of the land; and it is undisputed that the Seibers, plaintiff's grantors, had full knowledge of that fact. If plaintiff is bound by such knowledge, then, even though the case had been tried at law, or to a jury, the court would have been compelled to direct a verdict. In such a case, there would be no prejudice in failing to separate the law issue and try that on the law side of the calendar. *Slaughter v. McManigal*, 138 Iowa 643, at 650.

There may be some conflict in the evidence as to whether plaintiff himself had notice of the character of the barn as to its being personal property. Whether such notice is required, we do not determine. The only debatable proposition in regard to plaintiff's motion to separate the issues is whether there was such a conflict in the evidence as to entitle plaintiff to a trial at law, or to a jury, had a jury been demanded.

2. It is further said in argument by plaintiff that, even if it be conceded that he was charged with notice as respects the barn and its character as personal property, yet such fact would not justify defendants in wilfully destroying the barn; that acts of trespass cannot be avoided under a claim of right. It is a sufficient answer to this to say that plaintiff did not sue for trespass. In the petition, plaintiff asked to recover for the value of the barn, also for exemplary damages, doubtless on the theory that defendants acted wilfully. But they state in argument that, under the record, they do not claim to recover anything but the value of the barn, which they say

2. TRESPASS: basis for recovery: shifting ground.

is $250.00. The defendants, or some of them, claimed all the time to own the barn and the right to remove it.

3. We are satisfied from the evidence and the entire record that the trial court reached a just conclusion, but we should have placed it upon another ground. The equitable issue tendered by the defendants, if deter-

3. ACTIONS: law and equitable issues intermingling: equitable controlling: trial by court.

mined in favor of defendants, would have ended the controversy. It is possible, as suggested by defendants, that the trial court, having found against the plaintiff in holding that the barn was personal property, may not have considered it necessary to investigate as carefully the equitable issue tendered by the defendants. However this may be, we think that, where legal and equitable issues are tendered in the same action, and the equitable issue would end the controversy, the trial court might very properly exercise the broader equitable powers and determine the case on that ground, if the evidence is sufficient to sustain such issue.

4. REFORMATION OF INSTRUMENTS: mutual intention frustrated through mutual mistake: sufficiency of showing.

We think the evidence in this case justifies a finding for the defendants as to the reformation of the deed. It is from a failure of the trial court to so find that the defendants have appealed. We may properly set out a part of the testimony on this issue. It appears that George W. Crooks was appointed sole referee to sell a farm belonging to the Huffman heirs. The Seibers brothers owned some land adjoining the Huffman land and Dyer also owned five acres adjoining the same farm on the north. The Seibers were willing to purchase a part of the Huffman farm, but could not buy it all; the plaintiff desired to purchase a part of the Huffman farm, but not all of it. An agreement of that kind was entered into. The referee suggested to plaintiff and the Seibers that, to save making two referee's deeds, he report the sale of the entire farm to Seibers brothers, who would convey a part of the land to plaintiff. A survey was made and plaintiff paid the referee the agreed price

per acre for the land he was to take, and a deed was made for the entire property to the Seibers, and on November 27, 1911, they made the deed in question to plaintiff. This deed recites that they were ''lawfully seized in fee simple of said premises, that they are free of incumbrance, that we have good right and lawful authority to sell the same and we do hereby covenant to warrant and defend the said premises and appurtenances thereto belonging against the lawful claims of all persons whomsoever claiming by, through or under us.'' It is the claim of defendants that this was what they denominate an accommodation deed, and that there was no consideration as between the Seibers and plaintiff; that the money was paid to the referee. This deed was drawn by Mr. Crooks as a notary public, who was also the referee. Mr. Crooks testifies:

''My reason for writing after the warranty clause in this deed the words 'claimed by, through or under us' was that some persons think that a quit claim deed is not a deed sufficient to carry title and this would be called a special warranty. The object in that, the matter being understood between all the parties, and the purchase being made in the way it was, was that all that would be given would be a special warranty deed.

''Q. Was it your intention at that time in drawing up that deed, or from what Day had said to you and the Seibers brothers had said, that the Seibers brothers were to warrant the title to Mr. Day to this land?''

Over objection, he answered:

''No, it was not my intention, only to the extent of it carrying title to Mr. Day under the agreement to buy land according to their agreement.

''Q. Was it your intention in drawing that deed that Seibers brothers were to give Day any more title, or any

greater title, or any different title, than wnat they got by the Referee's deed from you?

"A. Nothing else than that, no.

"Q. Then, Mr. Crooks, this deed from Seibers brothers to Mr. Day was simply a form or formality that was gone through for the purpose of saving you making two reports of sale and two Referee's deeds?

"A. Yes, that is correct. As far as I knew from my knowledge of this transaction, the Seibers brothers did not receive any consideration whatever for this deed to Mr. Day. Not a cent, nor any property. It was during the negotiations that Mr. Day spoke to me about the barn, and I then called Mr. Day's attention to the fact that that barn was on there that belonged to Mr. Dyer. Mr. Day was in the office. I told him that Mr. Dyer had been in and spoke about the barn, and I told him I knew he was to have the barn for it did not belong, as I understood it, to the Huffman Estate, but it went out of my mind before that to say anything about it, and he wanted to know what about the matter of reserving it, and I said, 'The commission to me directs me to sell certain lands,' (describing them); that I didn't know that I would have any authority (as referee) to reserve anything in the matter of the barn, but as I understood it, it belongs to the person who owned the five acre tract. But it went out of my mind entirely, and we talked the matter over some, and he wanted to know if he bought it, what about the outcome of it, and I told him I didn't think it was a fixture. He wanted to know about it, and I told him, as I understand the law, that the barn was put there to be taken away, the party who placed it there had a right to remove it, and it wouldn't go with the sale unless they had been served with notice to remove it and failed to do so according to the notice, but he had better see Mr. Fry, who had procured the order for the sale of the land and see what he said about it. Subsequently he talked to Mr. Fry about it. This conversation was quite a while before I drew up this deed to plaintiff.

The matter hung along. As I have already said, we had as many as three conversations, and in each I explained to him, as I understood the matter, that I told him I was not selling the barn; I was selling the land described in the commission. He came back to me and said Mr. Fry had told him substantially the same as I had. I think the Seibers were close by when I had a talk with Mr. Day in reference to the barn. At the time I drew this deed from Seibers to plaintiff it had passed out of my mind in reference to the barn. If I had remembered about the barn at the time I had drawn this deed I would have put in there the reservation in reference to the barn.''

Some of the evidence is objectionable, but it was not all objected to. There is enough competent evidence to show the true agreement between the parties.

One of the Seibers testifies,—and the other says he understood it the same way:

''We did not have any intention at the time I and my brother executed this deed to C. W. Day of the land conveyed in the deed that we would give him any title or right to the Dyer barn. At the time that we executed this deed to C. W. Day we did not claim to own any title or interest in this barn of Dyer's.

''Q. If you had known, Mr. Seibers, that this deed that Mr. Crooks prepared and you and your brother signed conveyed any title, or was an assignment or transfer of the barn across the line that was claimed by Sol Dyer, would you have signed the deed?''

Over objection, he answered, ''No, sir.''

There is other evidence of like import. Though plaintiff denies some of the statements of the witnesses for defendants, we do not understand him to claim that the parties intended or supposed that the barn went with the land which plaintiff was buying. He simply relies on his deed. In fact,

we understand plaintiff's contention to be, on the other branch of the case, that because there was no conflict in the testimony, and because defendants' own testimony was not sufficient to warrant a reformation of the deed, and the court could have so determined from defendants' evidence alone, therefore the motion to transfer or to try the law issues at law should have been sustained. We think it very clear from the entire record that it was not the intention of any of these parties that the barn in question should go with the land purchased by plaintiff, and that the deed does not express the true agreement. We find this doctrine laid down in the books: that whenever it clearly appears that a written instrument, drawn professedly to carry out the agreement of the parties previously entered into, is executed under the misapprehension that it really embodies the agreement, whereas, by a mistake of the draughtsman, either as to fact or law, it fails to fulfil that purpose, equity will correct the mistake by reforming the instrument in accordance with the previous agreement. True, the mistake which may be thus corrected in such a writing must be mutual; that is, such a mistake in the draughting of the writing as makes it cover the intent or meaning of neither party to the contract. To entitle the party to a reformation of the contract, he must prove that it was the intention of both parties to make a contract such as he seeks to have established, and that this intention was frustrated, either from some fraud, accident, or mutual mistake of the parties. *Stelpflug v. Wolfe,* 127 Iowa 192; *Goodrich v. Fogarty,* 130 Iowa 223; *Pyne v. Knight,* 130 Iowa 113; 2 Pomeroy's Equity, Sec. 870; 4 Pomeroy's Equity, Sec. 1376; Eaton on Equity, p. 275.

The trial court might well have placed his decision upon this ground, but the result is the same, and the judgment is —*Affirmed.*

DEEMER, C. J., LADD and EVANS, JJ., concur.