HANNAH STROMBERG et al., Appellants, v. WILLIAM L. ALEXANDER, Appellee.

**EXCHANGE OF PROPERTY:** Rescission of Contract—Fraud.
1  Evidence reviewed, and *held*, plaintiffs had the right to rescind a contract for the exchange of properties, especially in view of defendant's conduct in corrupting plaintiffs' agent.

**REFORMATION OF INSTRUMENTS:** Sufficiency of Evidence—
2  **Fraud.** The court will be slow to decree specific performance on the application of one who is shown to have corrupted his adversary's agent in the very transaction as to which specific performance is sought.

*Appeal from Webster District Court.*—HON. ROBERT M. WRIGHT, Judge.

MONDAY, OCTOBER 4, 1915.

THIS action in equity was brought by plaintiffs to quiet title to land in Webster county, Iowa, after rescission by them of a contract with defendant for the exchange of said land for land in Texas. By cross-petition, defendant asked that the

contract be reformed and that he have specific performance. Plaintiffs' petition was dismissed by the trial court and the relief asked by defendant was granted. Plaintiffs appeal. —*Reversed and Remanded.*

*Kenyon, Kelleher & O'Connor,* for appellants.

*Healy, Burnquist & Thomas,* for appellee.

PRESTON, J.—1. Plaintiff, Hannah Stromberg, a widow, is the mother of the other two plaintiffs. The negotiations were carried on largely by the son, Ernst, a young man twenty-seven years of age, who went to Texas with defendant and one Marsh to look at the land. The daughter, Ebba, took but little part in the transaction, but left the matter largely to her brother and mother. The written contract was executed January 7, 1911. It was drawn by an attorney who is now one of plaintiffs' counsel. The substance of the contract, or so much thereof as is necessary to here state, is: Plaintiffs agreed to sell their 160 acres of land in Webster county, Iowa, at $130 per acre, and to give a deed therefor containing the usual covenants of warranty, to be delivered subject to conditions named, on March 1, 1911, and to furnish an abstract showing a merchantable title at least thirty days before March 1, 1911; taxes for the year, 1911, to be paid by plaintiffs, first parties. The consideration therefor was to be paid by defendant as follows: $1,000 upon the execution of the contract; $5,000 March 1, 1911—the said $5,000 to be applied on a $25,000 mortgage against the land, the balance of which defendant assumed. The interest earned on said mortgage prior to March 1, 1911, was to be paid by first parties, and interest thereafter to be paid by second party. In payment of $12,000 of the consideration which second party was to pay for said land, he was to convey to first parties 320 acres of land in Deaf Smith county, Texas, at $37.50 per acre. The Texas land is described in the contract as north half of section 4 in block

1. EXCHANGE OF PROPERTY: rescission of contract: fraud.

K-8, in said county. Second party was to execute and deliver to first parties, on March 1, 1911, a warranty deed, and to procure and deliver to first parties an abstract of title showing a merchantable title to said premises in second party, not later than September 1, 1911.

"In case the abstract of title to be furnished by second party is not furnished by March 1, 1911, then the first parties shall not be obligated to deliver said deed to the Webster county land until said abstract to the Texas land is furnished, and in such event said deeds shall be left in escrow at the Fort Dodge National Bank of Fort Dodge, Iowa, to be exchanged and delivered to the respective parties upon the furnishing of the abstract of title aforesaid. In case there should be a delay beyond March 1, 1911, on the part of said second party, in furnishing an abstract to the Texas property, the said second party shall, notwithstanding such delay, make the payments at the time specified above, to wit, $5,000 on March 1, 1911, and shall take and receive possession of the Webster county land on March 1, 1911, and the said second party shall deliver and the said first parties shall take and receive possession of the Texas land on the same date. In case the said second party shall fail to comply with the terms of this agreement in the furnishing of said abstract of title showing title aforesaid not later than September 1, 1911, and in case for said reason this contract should be rescinded by the said first parties because thereof, the said second party shall receive back from the first party the money hereon paid and the possession of said Texas land, with 5 per cent. interest from the date same is paid, unless the said second party is permitted to retain the rentals of the premises located in Webster county, Iowa, for the year 1911, in which event and in case he retains such rentals and collects the same, he shall receive no interest on said cash payments, but merely the principal shall be returned. The balance of the purchase price over and above the value of the Texas land, the $20,000 mortgage assumed,

and the $6,000 in cash payments, shall be paid by the said second party to first party by giving a promissory note, executed and dated on March 1, 1911, secured by a second mortgage on the land located in Webster county and herein agreed to be conveyed to said second party, which mortgage shall run second only to the mortgage now standing against said premises, which said note shall be due on or before March 1, 1912, and draw interest at the rate of 5 per cent., payable annually. Said mortgage shall be executed on March 1, 1911, and delivered on said date, in case the deeds to said premises are delivered to the said second party by the first party; but in case said deed is left with the Fort Dodge National Bank because of the matters above set forth, then said mortgage and note shall be left with said bank to be delivered at the same time such deeds shall be delivered. It is understood by the parties that the land located in Webster county is leased for the year 1911, and that the said second party is to receive said lease. All taxes payable during the year 1911 on the Texas land shall be paid by the said second party, the Webster county premises to be left in same condition they are now, all insurance to be turned over to second party thereon March 1, 1911.''

The time for defendant to furnish an abstract to the Texas land and for performance of the contract was extended to March 1, 1912. This extension was at the request of defendant, in order that he might perfect his title and correct the abstract of title first tendered, or make a new one. Defendant took possession of the Iowa land under the contract on March 1, 1911, and paid $6,000. Plaintiffs returned the $6,000 to defendant, March 1, 1912, and on said date gave defendant written notice of rescission, on the ground that defendant had not complied with the terms of said contract and had not furnished the abstract of title to the Texas land showing title to be in defendant as required by the terms of said contract, and had not furnished plaintiffs, as provided by the terms of said

contract, an abstract showing a merchantable title to said premises as per the terms of the contract as extended, and within the time provided for in the contract as extended. By the same written notice, plaintiffs offered to return to defendant all property and money received by them under the contract and offered to place him in the same position as he occupied previous to the making of the contract; authorized him to receive from the Fort Dodge National Bank the deed to the Texas land deposited by defendant in escrow, and to receive from said bank the mortgage and note left by him in the bank in escrow, and to receive from said bank such papers executed by him pursuant to the contract and left in said bank, and notified defendant that the transaction was thereby rescinded in all of its respects. By the same writing, plaintiffs also demanded the return to them of the abstract of title to the Webster county land and all other papers received by defendant except the lease and rental, which, by the terms of the contract, defendant was authorized to retain in case plaintiffs rescinded the contract because of defendant's failure to furnish abstract. On the same day, defendant served two notices on plaintiffs, demanding performance of the contract and tendering an abstract of title to land in Texas, which he claimed was in compliance with the contract, and also tendered a deed to the north half of section 3, Block K-8, Deaf Smith county, Texas. The grantee named in this deed was Hannah Stromberg alone. On the trial of the case in June, 1913, it was discovered that the grantee in this deed was Hannah Stromberg alone, and defendant then offered to permit the names of the other two plaintiffs to be inserted in the deed or to execute a new deed. The original of this deed has been certified and clearly shows that the word "three" and the figure "3" in the description have been altered by erasures. There was some evidence upon this point, and plaintiffs claim that this description was changed from section 4 (as described in the written contract) to section 3.

Plaintiffs did not take possession of the Texas land and

have exercised no acts of ownership over it. By amendment to the petition filed August 29, 1912, and setting up ·supplemental matter, plaintiffs alleged that on March 1, 1912, they were entitled to the immediate possession of the Webster county land, and to the rentals for the year 1912, but that defendant is collecting the rental therefor and that the amount of such rental is about $1,500, which defendant has appropriated, but that there is an implied obligation to return the same to plaintiffs, and that he holds the same for their benefit. They ask judgment against defendant for the amount of such rental and that the same be ascertained and that a writ of attachment issue. A writ of attachment was issued.

By answer and cross-petition, defendant avers that through accident, oversight and mistake of all parties to the contract, and of the scrivener who drew it, the land then owned by defendant in Texas was described as being located in section 4, when in truth and in fact said land should have been described as being located in section 3, and that it was contemplated by the parties that the land in section 3 should be conveyed to plaintiffs; that on March 1, 1912, he was ready, willing and able to perform fully his part of the contract whereby he undertook to convey said north half of section 3; and that on said date, he tendered, in Webster county, Iowa, to plaintiffs, full performance; that plaintiffs repudiated the contract, refused to perform the same and endeavored to rescind; admits that plaintiffs sent a $6,000 draft to him which he refused to accept and tendered the return thereof to plaintiffs, and states that he brings the same into court for that purpose; tendered full performance of all the conditions of the contract as actually made between the parties; asked that the contract be reformed and specifically enforced. June 3, 1913, and after the case had been called for trial, defendant by an amendment consented that, in the event the court should enter decree for defendant, interest at the lawful rate might be assessed by the court on the $6,000 draft returned to the defendant by plaintiffs, from March 1, 1912.

Plaintiffs allege in reply that the description of the Texas land as made in the contract was made with the full understanding and knowledge of defendant; that defendant directed and instructed that said description be placed in the contract as the same was in fact placed therein; and that the land which defendant informed the scrivener was to be conveyed was in section 4, and that the parties at no time intended any other land than that described in the contract to be covered thereby or conveyed; deny that there was any oversight or mistake and deny that either of the parties to the contract or the scrivener understood said contract to convey any property, other than that in fact described therein; deny that defendant refused to accept the $6,000 draft, but allege that defendant has retained and kept the same; they allege that defendant is unable to perform his said contract, and allege that he has never, at any time, been in a position to perform the same. In a separate division in the reply, plaintiffs plead that defendant is estopped from asserting that any land other than that described in the contract was intended to be conveyed, and estopped from asserting any error made by either the scrivener or the parties, and estopped from claiming or asserting that the land intended to be sold was in section 3, and estopped from asserting any rights under the contract or asking the enforcement thereof, and estopped from asserting that the same has not been rescinded, for the following reasons: That previous to the execution of the contract, defendant invited plaintiff Ernst Stromberg, on behalf of the plaintiffs, to inspect the land proposed to be traded to plaintiffs, and informed plaintiffs at said time that said land was located in section 4; that said Ernst accompanied defendant, and said land was described to said Ernst as being in section 4 at the time, and while said Ernst was on the ground; that thereafter, in the presence of all the plaintiffs, defendant stated to the scrivener drawing said contract that said land was located in section 4; that, subsequent to the execution of the contract, defendant never informed plaintiffs that he claimed said con-

tract was erroneously drawn, or that the land was of a different description from that so stated by him and described in the contract; that on March 1, 1912, defendant served upon these plaintiffs a notice which includes the following statements:

"You and each of you are hereby notified that the undersigned, William L. Alexander, herewith tenders to you an abstract of title to the real estate situated in the state of Texas that is described in the contract bearing date, January 7th, 1911, and this tender is served upon you as part of the tender of performance, and as part of the notice heretofore served upon you this day."

That the abstract so tendered these plaintiffs with said written notice covered lands located in section 4 as well as lands located in section 3, and that defendant at the time of making said formal tender failed to inform plaintiffs that the land covered by the abstracts so tendered was intended to be land located in section 3 rather than section 4, but that defendant tendered the abstract in question as covering the land described in the contract; plaintiffs allege that the abstract so tendered relating to lands located in section 4 failed to show any title to said lands in the defendant, and failed to show the title to the land described in the contract to be in defendant, and that at no time did defendant ever claim to plaintiffs that the lands described in the contract were not clearly described until the filing of the answer January 8, 1913; that on March 1, 1912, and subsequent to the making of said tender by defendant, above quoted, plaintiffs went to the bank and borrowed $6,000, giving their note therefor and obligating themselves to pay interest thereon, and sent a draft for $6,000 to defendant with their written tender; that in doing so they relied upon the fact that the defendant, in making tender of the abstract in fact tendered by him, tendered said abstract as covering the title to land described in the contract; and relied upon the position thus taken by defendant,

and upon the fact that defendant did not claim that any land other than that described in the contract was intended to be conveyed to plaintiffs; that defendant has kept said $6,000 draft in his possession and still retains the same; that, by reason of such facts, defendant is estopped, and that he has acquiesced in the rescission of the contract made by plaintiffs and has waived any objection thereto by retaining and depriving plaintiffs of the use of said $6,000. Defendant claims that after the contract was dictated, he did not wait until it had been struck off in typewriting, but that it was sent to him in Illinois and that he signed it without reading, and that he did not know, until after March 1, 1912, that the contract described the Texas land as in section 4. Plaintiffs claim that the contract expresses the agreement as they understood it and that they thought they were trading for land in section 4, and they say that they did not know, until after March 1, 1912, that defendant claimed otherwise, or that he claimed that the land he was trading was in section 3.

During the trial, plaintiffs amended their petition and alleged:

"That, without their knowledge or consent, the said defendant employed and agreed to pay the agent of these plaintiffs, one Fred Marsh, for his services in inducing these plaintiffs to close this contract or to execute papers and agree to the exchange planned; that said Fred Marsh at said time was the agent of these plaintiffs and such fact was known to said defendant; and that, by virtue of such employment by the said defendant of the said Marsh in inducing the said Marsh to aid the said defendant, these plaintiffs were induced by representations made by the said Marsh and said defendant, as to value, etc., to enter into said contract, and that the said defendant herein procured said contract to be executed by these plaintiffs through fraud and deceit, thus practiced, and that under all the circumstances it would be uncon-

scionable to enforce such contract as against these plaintiffs,
and the same should be cancelled.''

As before stated, plaintiffs agreed to pay $37.50 per acre
for the 320 acres of Texas land. A witness for plaintiffs,
whom we hold qualified to give his opinion, testified that the
value of the Texas land was not to exceed $5.00 per acre,
and this is not disputed by any other witness in the case.
Defendant himself testified that, before he and Marsh and
Ernst Stromberg went to Texas, and before the contract
was completed, he knew that Marsh was plaintiffs' agent in
the sale of their land, and supposed that plaintiffs were to
pay Marsh a commission, and that, while these three parties
were in Texas, defendant agreed to pay Marsh $100, if the
contract was completed and the papers delivered; that this
was done for the purpose of having said Marsh influence the
plaintiffs in that respect. Marsh testifies that his commis-
sions from plaintiffs would have been $300, but that after the
trip to Texas, he accepted a note from plaintiffs for $200,
and that he expected to get the other $100 from defendant.
He did not inform plaintiffs of that fact. Plaintiffs testify
that Marsh did urge them to make the trade and that they
were influenced thereby to enter into the contract. There is
some discrepancy in the testimony of some of the plaintiffs
as to what the real agreement was, between them and Marsh,
as to the payment of a commission; but taking the evidence
all together, including that of defendant, we are satisfied
that Marsh was the agent of plaintiffs and was to receive
a commission from plaintiffs and that defendant knew that
fact and that his offer to pay plaintiffs' said agent, Marsh,
for the purpose indicated was improper, and we regard it
as a strong circumstance against defendant's right to specific
performance. Plaintiffs contend that, even though the Texas
land for which plaintiffs were to pay $37.50 per acre was
worth but $5.00, this would not, of itself, be a sufficient
ground for refusing specific performance; yet this, with the

fraud of defendant in corrupting plaintiffs' agent, would, together and by themselves alone, be sufficient to prevent specific performance, and would be ground for rescission in equity.

It appears that plaintiffs did not know of this alleged fraud until after they served their notice of rescission, March 1, 1912, and they ask in their amendment to the petition filed during the trial that the contract be cancelled because of the fraud. Defendant retained the $6,000 draft a year or more. His explanation of this is that he directed his attorney in Illinois to return it, but through the neglect of the attorney, it was not done.

2. At the time the contract was executed, defendant was interested in land in both sections 3 and 4 in Deaf Smith county, Texas, but there is no claim that he complied with the contract as written or that he tendered an abstract and performance as to land in section 4 described in the contract. The defendant has the burden on the issue as to the alleged mistake, and unless he has shown, by evidence which is clear, satisfactory and convincing, that there was a mistake in the description of the Texas land and that it was mutual, or that the contract drawn professedly to carry out the agreement of the parties previously entered into was executed under the misapprehension that it really embodied the agreement, but by mistake of the draftsman it failed to fulfill that purpose, reformation will be refused.

"To entitle the party to a reformation of the contract, he must prove that it was the intention of both parties to make a contract such as he seeks to have established, and that this intention was frustrated either from some fraud, accident, or mutual mistake of the parties." *Day v. Dyer*, 171 Iowa 437, and cases.

If defendant is not entitled to a reformation of the contract, then, of course, he is not entitled to a specific performance, and in that case, plaintiffs had a right to rescind and would be entitled to the relief they ask.

It is conceded in argument that the real issue is upon the cross-bill—that is, as to the reformation and specific performance. After a careful consideration of the record, all of which has been read, we are of opinion that defendant has not shown himself to be entitled to a reformation of the contract. This conclusion decides the case, and we shall refer to the evidence bearing upon this point more in detail, and briefly refer to other points; but it would serve no useful purpose to attempt to set out all the evidence. There are some circumstances in the evidence of defendant tending to show that the parties were trading for land in section 3; but we think the weight of the evidence is in favor of the contention of plaintiffs, that they understood they were trading for land in section 4, and that the contract expresses the intention as they understood it.

It should be said that the three plaintiffs were called by the defendant as his witnesses, and part of the testimony relied upon by defendant to show the alleged mistake was the evidence of the plaintiffs, or some of them; and, as stated, their claim is that they understood that they were trading for land in section 4. By calling the adverse parties, defendant is perhaps not bound by their testimony, and yet it is his evidence. We shall now refer to some of the circumstances which show that plaintiffs were not trading for land in section 3, and that their understanding was that they were to receive land in section 4, and that the agreement was that they were trading for land in the last named section. None of the plaintiffs, except Ernst, went to Texas. None of them knew anything of the description of the land except as they were informed by defendant. Ernst did examine land shown by defendant, but says that by looking at the land he could not tell the section in which it was located, and defendant testifies to substantially the same. At least four witnesses, the three plaintiffs and Marsh, testified that before Ernst went to Texas, defendant told them that Ernst was to look at the land in section 4 and plaintiffs were to trade for land

in that section (this is denied by the defendant) ; the contract itself describes the land as in section 4; on March 1, 1912, defendant served notice on plaintiffs demanding performance of the contract; the abstracts first tendered showed land in both 3 and 4; defendant was interested in land in both sections 3 and 4; the deed tendered by defendant shows an erasure of some other description than section 3 and a change to section 3. Both Ernst and defendant describe the distance and route taken by them in driving from the town of Hereford to the land shown, the character of the land, which, from the evidence, appears to be similar in both sections, the improvements, ploughed ground, etc. Witness Wrench testifies as to improvements on section 3. From such descriptions, it is claimed by plaintiffs that the land shown was in section 4, while it is claimed for defendant that it was in section 3. But from this description alone, it would be difficult for us to say whether the land was in 3 or 4. At the time the contract was dictated, there were present, Ernst Stromberg, Marsh, O'Connor, Mrs. Kelleher, the stenographer, and defendant. Defendant claims that, while Mr. O'Connor was dictating the terms of the contract, he (defendant) handed O'Connor an old deed, from which O'Connor should have described land in section 3. This is denied by all others present. While they all admit that defendant had a paper in his hand at this time, they deny that it was handed to O'Connor, and they all testify to circumstances showing that there was no mistake, but that defendant by word of mouth gave the description to O'Connor as in section 4, and that O'Connor so dictated it, and the stenographer testifies that she took it down correctly and correctly struck it off in typewriting; that defendant was present when O'Connor was dictating the contract and dictated section 4. Defendant testifies and claims that he understood it was section 3 and that the contract should have so described it. Defendant at first testified that he told plaintiffs he owned a section of land in Texas, but on cross-examination states that he made a mis-

take in that, and says that he told them that he owned a one-third interest in a section and a half of land in Texas. In connection with his testimony, an agreement was produced, between defendant and the other owners of the section and a half of land in sections 3 and 4, by which the others were to deed to defendant or release to him all their interest in the north half of section 3, and defendant was to release his interest in section 4; but the deed to defendant under this agreement was not delivered to him until after March 18, 1911, which was after the contract in question was drawn and executed. On cross-examination of defendant, he testified: "Q. So you don't remember, very well, the things that took place in Mr. O'Connor's office? A. I .can't remember dates very well, or descriptions very well." He also testifies that at that time he had been up the night before and was tired and sleepy; says he was not asleep but didn't pay much attention to the drawing of the contract; that he left the office before the contract was struck off in typewriting and that he did not hear it read, and, as before stated, that when it was sent to him in Illinois, he signed it without reading it. The plaintiff Ernst Stromberg testifies that, before March 1, 1912, and when defendant was out, about September 1, 1911, to get an extension of the contract, defendant then had the contract, or a copy of it, and that witness saw defendant looking at it as though he was reading it. There are perhaps other circumstances bearing upon this question, but we shall not take the space to go into further detail. The defendant may have intended to describe and convey the land in section 3; but, as stated, he has not shown by that quantity and quality of proof required in such cases that there was a mutual mistake on the part of plaintiffs as well, or that the minds of the parties met and agreed on the proposition that defendant was to convey and plaintiffs receive land in section 3 instead of section 4.

3. It is further contended by plaintiffs that, even if it be true that the land in fact shown young Stromberg was in

section 3, and that defendant intended to describe in the contract such land, yet the evidence shows that such a mistake, if it was one, was the mistake of defendant and one arising from his own fault and neglect in failing to give the correct description of the land to be conveyed, and in failing to subsequently discover the mistake after it was made, and that defendant is estopped; that, relying upon the contract and defendant's demand for performance of the same as written, they borrowed money and obligated themselves to pay interest in order that they might tender back, on March 1, 1912, the $6,000 which he had paid to them. We think there is force in this point, but deem it unnecessary to discuss it further, in view of our conclusion of the question of the reformation of the contract.

And we think there is force in plaintiffs' point referred to earlier in the opinion in regard to the value of the Texas land and the conduct of defendant with regard to plaintiffs' agent. It is contended by defendant that

2. REFORMATION OF INSTRUMENTS : sufficiency of evidence : fraud.

Marsh was a mere middleman and was not vested with any discretion or judgment in the negotiations and that he had a right to receive compensation from both sides. We do not decide whether, under the circumstances in this case, Marsh was a mere middleman. But he did not inform plaintiffs and they had no knowledge, before the execution of the contract, that he was to receive compensation from defendant. Marsh went to Texas to see the land at the request of the plaintiffs: he was an experienced real estate man. Plaintiff Ernst was a young man without experience in values of Texas land; it was the duty of Marsh to give his principals his best information and judgment as to the value of the Texas land; and it may be that defendant feared he might do this. At any rate, defendant impliedly put Marsh in the position of perpetrating a fraud upon his principal, and defendant was a party to it. Without going further into the details of the evidence on this point and without further discussion, we should be slow to decree

specific performance under such circumstances. As bearing upon this, see *Hunter Realty Co. v. Spencer,* 95 Pac. 757 (17 L. R. A. (N. S.) 626, 627). It is true, the rule is that there is a certain discretion in the chancellor in granting or refusing specific performance, but the case is triable here *de novo* and that discretion is for us, as well as the trial court.

It is contended by appellants that the abstract of title tendered by defendant did not show a merchantable title to the land he claims he was selling to plaintiffs—that is, land in section 3; but we feel that we ought not to prolong the opinion in order to discuss this question, except to say that an unsatisfied mortgage is referred to in the abstract. A lawyer from Texas testified that, in his opinion, the abstract showed merchantable title; but he based his opinion upon an examination of the records as well as upon the abstract, and explained the reference to the mortgage by referring to records which were not shown upon the abstract. We may say that, taking all the facts and circumstances shown in this record, we are impressed that the equities of the case are with plaintiffs, and that the relief prayed by them should be granted. The arguments have taken a wide range, and the case has been fully and ably presented by counsel on both sides, but the principal question in the case is one of fact.

4. We are of opinion that the decree ought to be reversed. It is reversed and remanded, for a decree in harmony with this opinion; and in view of the fact that defendant has had possession of the Webster county, Iowa, land since March 1, 1911, and has been collecting rent thereon since March 1, 1912, and that the plaintiffs ask that the amount thereof be ascertained, and because of the payment of taxes by defendant on both the Texas and Iowa land, and perhaps some other similar matters, the case is remanded for further hearing as to such matters.—*Reversed and Remanded.*

DEEMER, C. J., WEAVER and EVANS, JJ., concur.