BUCK AUTO CARRIAGE & IMPLEMENT Co., Appellee, v. LESLIE H. TIETGE, Appellant.

REFORMATION OF INSTRUMENTS: Necessary Parties—Assignment of Lease. The landlord is not a necessary party to an action by a lessee of the premises to reform the terms of an assignment of the lease by the lessee to a third party. (Sec. 3462, 3466, Code, 1897.)

REFORMATION OF INSTRUMENTS: Mutual Mistake—Evidence. Evidence reviewed, and *held* to justify the reformation of the terms of an assignment of a lease by excepting a certain portion of the premises from the operation of the assignment.

REFORMATION OF INSTRUMENTS: Mutual Mistake—Mistake of Draftsman. Executing an instrument under the mutual misapprehension that it embodies the agreement by the parties when, by mistake of the draftsman, it does not do so, justifies a reformation on the ground of mutual mistake.

COSTS: Apportionment—Trifling Recovery. Between litigants presenting conflicting demands, costs will not be apportioned in favor of one whose recovery is trifling.

INTEREST: Open Accounts—Evidence. Evidence reviewed, and held to show that an account had not been closed and that an allowance of interest from the date of the decree only was proper.

*Appeal from Polk District Court.*—HUGH BRENNAN, Judge.

SATURDAY, FEBRUARY 12, 1916.

THIS is an action in equity. Plaintiff asks the reformation of an assignment by plaintiff to the defendant of its interest in a lease. It alleges that there was an oversight and mutual mistake of the parties in drawing the assignment, and prays that it be reformed to express the true contract, agreement and intent of the parties. Plaintiff also asks to recover from defendant the sum of $496.64 for goods sold and delivered, also to recover the sum of $56 on account of certain articles of personal property damaged, lost or destroyed by the defendant. The defendant denies that there was any oversight or mutual mistake of the parties, or mistake of the person preparing it, so as to reserve or except therefrom the northwest room of the premises, but alleges that the written assignment as executed was the real contract. By way of counterclaim, defendant seeks to recover from plaintiff the sum of $900 as the reasonable rental value of the northwest room of the leased premises, which it alleges plaintiff's lease and assignment thereof to defendant covered, and of which it did not obtain possession because the said room had been sublet to Goodwin and Goggins as a restaurant. This item depends upon the determination of the issue as to whether or not the assignment of the lease is reformed. As we understand appellants, they could only claim this amount in case there is no reformation of the assignment. In another division of the answer and counterclaim, defendant seeks to recover from plaintiff $58.19 for work and labor performed for plaintiff. The trial court found for plaintiff and against defendant as to the relief asked by way of reformation of the assignment, and found for plaintiff on the item for goods sold and delivered and on the $900 item in defendant's counterclaim, and found for the defendant and against plaintiff on the $56 item for goods alleged to have been damaged, lost or destroyed, and also found for defendant on its division of the counter-

claim for work and labor performed for plaintiff. The substance of the decree was: That the assignment of the lease in controversy made by plaintiff to the defendant about April 1, 1910, be reformed to agree with the true intent of the parties thereto on said date and so as to except from the operation thereof the room in the northwest corner of the premises mentioned in said lease, which room on said date and for a long time prior thereto, and for a long time subsequent thereto, was occupied and used as a restaurant,—the force and effect of said assignment as herein and hereby reformed being to transfer from plaintiff to defendant Rooms 612, 614 and 616, Mulberry Street, Des Moines, Iowa, saving and excepting said restaurant room in the northwest corner thereof; that plaintiff have and recover from defendant the sum of $441.45 (the difference between the $499.64 found for the plaintiff and the $58.19 found for defendant), with interest at 6 per cent. on said sum of $441.45 from the date of the decree. The defendant appeals, and there is a cross-appeal by plaintiff from so much of the judgment and decree as allows interest only from its date. Plaintiff's claim is that it should have been allowed interest from a date six months after the last item in the account.—*Affirmed on both appeals.*

*Cummins, Hume & Bradshaw* and *Edward W. Hamilton,* for appellant.

*Dale & Harvison,* for appellee.

PRESTON, J.—From the somewhat lengthy statements of the facts by both parties, and from the record, it appears that on October 5, 1906, and for some time prior thereto, F. M. Hubbell & Son (Inc.) owned the store rooms before mentioned, including the cellar under the north 100 feet of Rooms 614 and 616, and F. E. Goodwin and F. J. Goggins were using and occupying the premises as lessees of the Hubbells under a lease dated August 22, 1906, which ran until October 1, 1908. The Hubbells leased to Goodwin and Goggins the

premises described, for three years from and after October 1, 1908, for the monthly rent of $138.33, to be paid monthly in advance on the first day of October, 1908, and each month thereafter. This lease was to take effect if the lease of August 22, 1906, for the same premises was in force and effect September 30, 1908, and was intended as a renewal on that condition. On September 17, 1907, Goodwin and Goggins and the plaintiff entered into a written agreement, whereby the first named parties agreed, among other things, to assign to the plaintiff all their interest in the lease of said premises and to give possession thereof November 10, 1907; and plaintiff agreed that Goodwin and Goggins, or either of them, might occupy the northwest room for restaurant purposes during the life of the lease, free of rent or charge, provided Goodwin did not sublet this room. On November 12, 1907, Goodwin and Goggins assigned to the plaintiff all their interest in the Hubbell lease. Rooms 612, 614 and 616 were each 22 feet wide on Mulberry street by 152 feet deep. There was no partition separating one from the other, except that a space 22 feet wide on Mulberry Street by 35 feet deep was partitioned off and formed the northwest room of said premises mentioned in the agreement of September 17, 1907, which was used as a restaurant by Goodwin during all the time, while the rest of the premises was used successively by Goodwin and Goggins and the plaintiff and the defendant as an automobile garage. The restaurant room had no means of communication with the remainder of the demised premises. Four or five days prior to the first of April, 1910, plaintiff and defendant began negotiations looking to a sale by the plaintiff to the defendant of the lease to the plaintiff's automobile garage, machinery and supplies. These negotiations were concluded by three written instruments, all dated April 1, 1910. The first of these was an assignment by the plaintiff to defendant of the Hubbell lease and his acceptance of the same. The assignment is in the following form:

"The within lease is hereby assigned by Buck Auto Car-

riage & Implement Company, lessee, to Leslie H. Tietge from and after April 1, 1910, and the said Leslie H. Tietge hereby accepts said assignment and agrees to pay the rental therein agreed to be paid as the same becomes due to the lessor hereof.''

(Signed by the plaintiff, by its president, and by the defendant.)

The second instrument just referred to is a collateral agreement, whereby defendant agreed to store certain automobiles and other property for certain periods free of charge; and the third a bill of sale signed by the plaintiff alone, by which plaintiff, in consideration of $2,000 paid by the defendant, sold to the defendant substantially all the personal property owned by it in connection with its garage.

It is the contention of plaintiff that the possession of the restaurant room was reserved, but without the right or power to sublet the same, and without the payment of rent therefor, and they claim that the assignment should be reformed so as to except from the operation thereof the restaurant room in the northwest corner.

It should be also stated, if it has not already been done, that indorsed upon the renewal lease before referred to was an assignment by Goodwin and Goggins to the plaintiff of all right, title and interest in the same from and after November 1, 1907. In addition to paying the rent of $138.33 per month, plaintiff paid a bonus of $10 per month for 18 months to the original lessees. After the deal between plaintiff and defendant, April 1, 1910, defendant took possession of the personal property so purchased by it, and also took possession of all the demised premises except the restaurant room. Possession of the restaurant room was continued by the original lessees, free of rent, and without the right to sell or sublet. Plaintiff continued the automobile business from November 1, 1907, to April 1, 1910, during which period it paid the rent of $138.33 per month to Hubbell. The original lessees continued in possession of the restaurant room free of rent, and when the

original lease expired, September 30, 1908, the renewal lease became operative October 1, 1908. Defendant insists that the agreement with respect to the lease was that he should take an assignment of the entire lease, without any exception of the possession of the restaurant, and, inasumch as he has not received the possession of the restaurant corner, he claims relief.

1. It is contended by appellant that the court below erred in reforming the assignment as it was reformed by the decree, because F. M. Hubbell & Son (Inc.) was not a party plaintiff or defendant; but such question is not raised by the defendant's pleadings in the court below. Under Code Section 3462, defendant could have asked the trial court to make the Hubbells parties, but no such order was asked; or the court could have ordered the Hubbells brought in, under Code Section 3466. The controversy as to the reformation of the assignment is between the plaintiff and defendant, and we think can be adjudicated without prejudice to the rights of Hubbell. The Hubbells had the right to receive a monthly rent of $138.33, and this was paid by plaintiff while it held the lease. Mr. Tietge agreed to pay it from April 1, 1910, and has done so. Neither plaintiff nor defendant is seeking any rescission of their contract, but plaintiff is seeking an enforcement of the real contract. But, preliminary thereto, it asks a reformation. We think the trial court had the power to render the decree without the Hubbells' being in court.

2. There are no intricate legal questions involved. The main contest was as to the reformation of the assignment, and this was a question of fact. No useful purpose could be served by fully setting out the evidence; but, having read it, we are satisfied with the conclusion reached by the trial court. It is conceded by defendant in argument that, as to the assignment as written, they do not pretend to say

*1. REFORMATION OF INSTRUMENTS: necessary parties: assignment of lease.*

*2. REFORMATION OF INSTRUMENTS: mutual mistake: evidence.*

that there was an actual meeting of the minds of the parties. They concede that there was an oversight or mistake on the part of plaintiff, but claim that defendant was not responsible for that oversight or mistake, and they concede that the defendant made a mistake, too, in the sense that he was mistaken or misled. While there is a conflict in the testimony at some points, there were circumstances justifying the conclusion of the trial court, some of which will be referred to later. We shall content ourselves with stating some of the circumstances shown by the record.

The first and second interviews between Mr. Buck, president of plaintiff company, and the defendant, when negotiating for the purchase by defendant of the automobile business, were held in the garage part of the premises, which, as stated, was separate and distinct from the restaurant room. During the negotiations, defendant was shown generally over the premises that were occupied by plaintiff. Mr. Buck testifies that it was mentioned that it would be a nice thing if the restaurant room belonged to the rest of the premises, because there was no light in that part of the store, there being no windows there. Defendant testifies that during the negotiations they did not do anything in the restaurant corner; that there was no part of the automobile business in the restaurant, and they did not go in there at all; that Buck told him they wanted to sell; that the automobile business was not paying, and he wanted to get rid of it. It would seem that, if defendant is correct in his present contention that he was to receive possession of the restaurant corner, he should have included that in the inspection of the premises. There is evidence, also, that, during negotiations at the garage, Mr. Buck reserved the restaurant, and that defendant consented thereto. Mr. Buck testifies that he told defendant, during the negotiations for the sale of the lease and the property, that the restaurant room had always been an eyesore to them, but that they could not get hold of it unless Goodwin sold out, and in that case, according to the agreement they had with

Goodwin, it would revert to plaintiff; that if Goodwin did not personally conduct the restaurant, he could not hold it; that this was explained to the defendant. He says that he had no intention of transferring to defendant the restaurant corner. The defendant testified that there was nothing said in regard to the lease which plaintiff held on the property except that Buck would want a bonus of $10 a month on the lease; that he said there was a year and a half to run from the first of April and he wanted a bonus of $180, and that was agreed to; that he saw the lease and understood that he was to pay $138.33 per month to the landlord, beginning April 1st. He says further:

"The restaurant room was partitioned off from the remainder of the space, and the party running the restaurant was in possession doing business as a restaurant, both upon my first visit and upon my second visit there. I had no interview with the man running the restaurant before April 1st, nor before I closed up with Mr. Buck, to see what rent he was paying. I agreed to pay rent on the whole place. I knew I did not get the restaurant, because it was partitioned off, and the people were in there. Although knowing that I did not get the restaurant, and also that I agreed to pay the full rent, I made no inquiry as to how much they were paying. I supposed he was paying his proportion of the rent, but never asked him what he was paying; I do not remember whether I paid the first payment of rent under the lease, to Mr. Hubbell or to Mr. Buck. I think I paid my first payment of rent about the first of April, 1910. It was after the first of May before I went to see the restaurant man. I waited over a month after I had paid the rent for the restaurant man before I went and asked him how much he was to pay. I did not go to him when I made the April payment, to see how much I was going to get back, simply because I did not think anything about it. I paid the May rent about the 15th of May. That was the second month's rent I paid for the restaurant man, and then I went to him and learned that he claimed he had no rent

to pay. I knew from the start that I was not going to occupy the restaurant room. I knew in May I was not going to get any rent for the restaurant room, but I did not notify Mr. Buck until the 6th of June. In the meantime, I had received from the plaintiff the whole of this original invoice, $499.64.

When I made my deal with Buck, I understood that the restaurant man was leasing from Hubbell. I thought he was, and I distinctly understood that I would not get it. I used this language in a letter, 'After looking over the lease carefully, which you turned over to me, I find that it calls for 612, 614 and 616, Mulberry, and nowhere does it mention the lunch room.' I used that language because there should have been some exception made in the lease. The fact is that in the meantime I had discovered there was no exception in the assignment of the lease to me, and because there was no such exception, I stood upon the letter of the assignment, although I knew I was not to get that corner.''

Another circumstance having a bearing is that defendant took possession April 1, 1910. Thereafter, and down to June 23, 1910, and after he had been informed that the restaurant people were not to pay rent, he purchased, from time to time, merchandise from the plaintiff, to the extent of $499.64. He claims to have discovered the mistake or wrong that he claims Buck perpetrated upon him, about the middle of May, 1910. Thereafter, though corresponding frequently with plaintiff, he makes no mention thereof until the letter of June 6, 1910. From this it appears that he did not become inquisitive until someone asked him who owned the restaurant, and then he learned that the restaurant people were not renting from Hubbell. He then calls attention to the fact that the lease calls for the whole of the three rooms. He then says that since plaintiff had turned the lease over to him, plaintiff. should see that he have full possession at once. In this he does not claim that he understood at the time of the negotiations that he was to have possession of the restaurant, but makes his demand for possession because the lease and plain-

tiff's assignment did not except the restaurant. We think, under the evidence, that defendant knew he was not to receive rent for the restaurant. Some of the evidence bearing upon this has been already set out, and we shall not further consider that.

There is other evidence in the record bearing upon this, but, as stated, we do not feel justified in going too much into detail. Where there is a mutual mistake, or where a written

3. REFORMA-
   TION OF IN-
   STRUMENTS:
   mutual mis-
   take: mistake
   of drafts-
   man.

instrument, drawn professedly to carry out the agreement of the parties, is executed under the misapprehension that it embodies the agreement, whereas, by mistake of the draughtsman, it does not do so, equity will

reform the instrument in accordance with the actual agreement. *Day v. Dyer,* 171 Iowa 437, and cases.

Plaintiff offered in evidence a contract between plaintiff and Goodwin & Goggins, and it is said by appellant that such contract and the evidence in connection therewith should be disregarded, and they say that the trial court acted upon such testimony. The case was in equity, and we have no means of knowing whether the trial court did act upon it or not. But, without discussing this feature of the case, we are satisfied from evidence other than the contract that the evidence is sufficient to sustain the decree.

3. The next point is that the court erred in taxing the costs of the trial to defendant, and, as we understand it, they claim there should have been an apportionment. Some of the

4. COSTS: appor-
   tionment:
   trifling re-
   covery.

items in the different accounts are not disputed, and, as stated, the main contest was on the reformation of the assignment. On this issue, plaintiff was successful. There

seems to have been no contest as to the goods sold, but, in any event, plaintiff was also successful in this. A part of one item in defendant's counterclaim was admitted, so that any contest as to which defendant was successful was in regard to a few dollars in the $58 item in the counterclaim.

Any costs made upon this we think were not of sufficient amount to justify an apportionment of the costs.

4.   As to plaintiff's appeal, it is claimed that the court erred in refusing to allow interest to plaintiff from six months after the date of the last item in its open account, and in allowing interest only from the date of the decree. Had plaintiff merely sued upon an open account, it might well be that he would be entitled to interest from the date of the last item, or six months after; but plaintiff did not do this. An attempt was made as late as June 14, 1910, which was later than the last item of plaintiff's account, to settle the difference between the parties in regard to the possession of the restaurant room or the rent for it. On that date, plaintiff's president wrote that he would come out sometime later and go over the grounds carefully, and that perhaps they could make some kind of arrangement by which they could divide the proceeds of the rental of the restaurant. Furthermore, the trial court found that after the last item in defendant's account, the defendant performed work and labor worth $58.19 for plaintiff, and counsel for plaintiff concede that no question is made thereon in this court; so that the account between the parties was still open and undetermined until plaintiff brought its action. We are of opinion that, under these circumstances, the plaintiff was not entitled to interest prior to the decree.

5. INTEREST: open accounts: evidence.

We conclude, therefore, that the judgment and decree of the trial court was right, and it is affirmed on both appeals.— *Affirmed.*

EVANS, C. J., DEEMER and WEAVER, JJ., concur.