SARAH H. GOODRICH, Appellee, v. D. J. FOGARTY, Appellant.

**Reformation of instruments:** EVIDENCE. In an action to reform a
1 written contract for the purchase of nursery stock, the evidence is reviewed and held to sustain the plaintiff's contention that the contract was signed through representations of the agent that payment would be postponed until the stock should bear and then from the fruit at its market value, and that the contract should be so reformed.

**Laches.** Where the buyer of goods gave notice, shortly after the
2 written order was given, that the writing did not contain the actual agreement and requested a cancellation of the same, to which the seller made no reply but soon thereafter delivered the goods and requested acceptance, an action then brought to reform the writing was not barred by laches of the buyer.

**Variance.** Proof of facts not alleged in a pleading will not con-
3 stitute a variance when the cause of action as alleged is fully proven.

**Change of venue.** An action to reform a contract for the sale of
4 nursery stock may be brought in the county where the sale was made, under Code Section 3500, and is not subject to a change to the county of the seller's residence.

*Appeal from Hamilton District Court.*— HON. W. D. EVANS, Judge.

MONDAY, MARCH 12, 1906.

ACTION in equity to reform contract. Decree for plaintiff, and defendant appeals.— *Modified and affirmed.*

*Organ & Pusey* and *D. C. Chase,* for appellant.

*Boeye & Henderson,* for appellee.

WEAVER, J.,— The defendant is a nurseryman or wholesale dealer in trees, vines, and ·shrubbery at Council Bluffs, Iowa, and as such employs agents and canvassers who ply their trade in the customary manner in various parts of the state. In the month of May, 1903, two of these agents canvassed a considerable portion of Hamilton county, making their headquarters in Webster City, from which place they radiated through the surrounding country, driving teams secured from local livery stables. While the orders taken by them contained a printed provision that the stock should be delivered, charges prepaid, on board cars at 'Council Bluffs, the method of business seems to have been that the goods were shipped to the address of plaintiff or his agent, who went to Webster City, took possession of them and removed them to some convenient place of storage, where the various customers were notified to meet the agent and make settlement. Among the orders so taken was one signed by the plaintiff, calling for the delivery to her in the fall of 1903 of one thousand two hundred and ten grape roots and one hundred gooseberry roots at an aggregate price of $176.25, and twenty blackberry, thirty raspberry, and ten dewberry roots; these latter to be furnished without money and without price. Shortly after giving the order plaintiff for some reason came to the conclusion that she had been overreached in the deal, and wrote to the defendant, informing him that the writing obtained from her did not conform to the agreement and un-

derstanding of the parties and that she would not comply with it.    The defendant made no response to this notice, and in the following October undertook to deliver the goods. Plaintiff refused to receive them and instituted this action to reform the contract.    It is her claim that the agreement made between her and the canvassing agent was to the effect that payment of the bill should be postponed until the grape vines were in bearing, and that payment should then be made in fruit from said vines at its market value.

The evidence tends to support this claim, and to further show that the agents, professing a desire for the opportunity to show the ease with which wealth could be produced by a

1. REFORMATION OF INSTRU-MENTS: evi-dence. small investment in their grape roots, proposed and promised to plant, or to assist in plant-ing and caring for, the vineyard and teach the purchaser the proper method of cultivation.    When the order had been written out for the plaintiff's signature, she objected that it did not seem to read in strict harmony with the promises and inducements which had been held out to her, but her suspicions were promptly put to sleep by the agent, who took the order and wrote upon it, " This is a time order," and explained to her that in the language of nurserymen this was sufficient to protect her rights.    He assured her, moreover, that when the defendant or his agent came on in the fall to deliver the roots and perform the agreed services a new contract would then be made, which would cover all the matters agreed upon between them. The plaintiff's story was corroborated by two witnesses, and defendant saw fit to rest his case without offering any tes-timony.    The order is one of those artfully drawn instru-ments which, if literally interpreted, leaves the person sign-ing it practically defenseless in the hands of him to whom it is given, and makes valueless such remedy as he might otherwise have thereon by compelling him to go to a distant county to obtain it.    Few, if any, persons in their right minds would put their names to such a paper with an in-

telligent understanding of its force and effect, and, while a signer may estop himself from objecting thereto by his own folly or recklessness, the unlikelihood that the average person will knowingly permit himself to be placed at such disadvantage is a circumstance we may well take into consideration upon an allegation of fraud in procuring it.

The claim of the plaintiff that the writing does not reflect the agreement is well supported by the evidence, and, with the failure of the defendant and his agents to offer any other version of the negotiations leading up to the signing of the order, amply supports the decree in this respect. Indeed, no other conclusion can be reached from the record.

It is said that the plaintiff should not maintain her action because of laches in bringing it. There is no merit in the objection. She notified defendant in June of her claim that the writing was not her contract and requested him not to send the goods. He saw fit to ignore the notice, and in October to bring on the goods and press them upon the plaintiff's acceptance. Immediately thereafter this action was begun. There was no unreasonable delay.

2. LACHES.

Neither is there, as claimed by appellant, any fatal variance in the proof offered. The most that can be said is that the plaintiff not only proved all she alleged in her petition, but more. The petition, while alleging the real contract to have been one to pay the price of the vines in fruit raised thereon, does not allege an agreement on the part of defendant to do the planting, and, while the latter stipulation was proved, it was in excess of the allegation. So far as the decree appealed from grants relief in this latter respect, it should be modified.

3. VARIANCE.

II. On being served with notice of this action the defendant appeared and moved that the venue of the cause be changed to Pottawattamie county, which is the county of his residence. The motion was resisted and overruled

upon the theory that the transaction or business which is the

**4. CHANGE OF VENUE.** subject of this controversy grew out of, or was connected with, an office or agency which was at the time maintained by the defendant in Webster City, Iowa, at which place the defendant was also served with original notice of the action. See Code, section 3500. The case is in all essential particulars identical with *Wood v. Fogarty and Rice,* 118 Iowa, 104, and upon authority of that precedent there was no error in the ruling of the trial court denying the change of place of trial. See also, *Locke v. Chronicle Co.,* 107 Iowa, 390.

The decree appealed from will be modified by striking from the order or contract as reformed the requirement that defendant shall plant the vines and bushes upon the plaintiff's land in Hamilton county, the plaintiff assisting therein, but in all other respects such decree will be affirmed. The appellant will pay the costs of this court.— *Modified and affirmed.*