THISTLE COAL COMPANY, Appellee, v. REX COAL & MINING COMPANY, Appellant.

**Action against a corporation:** PLACE OF TRIAL. An action may be
1  brought against a corporation in any county in which it has an office or agency respecting any business growing out of or connected with such agency. On a motion for change of place of trial the showing is held sufficient to establish agency within the meaning of Code Section 3500, although payment on the contract was to be made in the county in which plaintiff's principal place of business was located.

**Appeal:** FINDING OF COURT: EFFECT. The finding of the court in a
2  law action has the same force on appeal as the verdict of a jury.

**Contracts:** BREACH: EVIDENCE. Evidence in an action on a con-
3  tract for purchase of coal held to show a breach by the purchaser.

**Breach of contract:** MEASURE OF DAMAGES. Where it is the custom
4  and the necessities of the case require that coal mine operators make advance contracts for fall and winter delivery, an operator who contracts with respect to the total output of his mine may recover as damages, for a purchaser's breach in refusing to receive the agreed amount of coal, the difference between the contract price and the cost of production.

*Appeal from Appanoose District Court.*— HON. FRANK EICHELBERGER, Judge.

SATURDAY, DECEMBER 15, 1906.

ACTION at law for damages growing out of an alleged breach of contract. Trial was had to the court without the aid of a jury, resulting in a judgment in favor of plaintiff for the sum of $901.75. Defendant appeals.

*James G. Bull* and *Claude R. Porter,* for appellant.

*Howell & Elgin,* for appellee.

BISHOP, J.— A motion to strike appellant's brief on the ground that the same does not conform to our rules has come to us with the submission of the case.    An examination discloses that the requirements of rule 54 have been only partially complied with.    It is evident, however, that a good-faith attempt at compliance was made, and in view of this we are disposed to overlook the shortcoming and deny the motion. In doing this it is not intended to establish a precedent.

The plaintiff company is a co-partnership composed of residents of Appanoose county, and engaged in mining coal in that county.    The defendant is a corporation having its principal place of business in Creston, Union county, and is engaged in mining and shipping coal.    Geo. B. Rex is president of said company, and Harry N. Rex secretary.    On August 14, 1903, said parties entered into a contract in writing, the provisions of which material to this controversy are that the Thistle Company agreed to sell to the Rex Company four hundred car loads of coal at $2.10 per ton, free on board cars at Cincinnati, Appanoose county, the coal to be delivered at the rate of fifty car loads per month for eight months, commencing August 1, 1903.    The said Rex Company agreed to pay for the coal " on the 15th of each month from its home office in Creston."    The contract was signed on behalf of the Rex Company by George B. Rex.    This action was commenced in Appanoose county, and the petition alleges  a failure and refusal on the part of the defendant to carry out said contract, in that, after having received two hundred and eighty-seven of the four hundred cars of coal provided for therein, it refused to receive the remaining one hundred and thirteen cars.    Damages in the sum of $1,350 are alleged.

I.    In due time, and before answer, the defendant filed

a motion for a change of place of trial from Appanoose county to Union county. This motion was filed in reliance upon Code, sections 3501-3504, which provide, in substance, that personal actions must be brought in the county of the residence of defendant, and if brought in any other county, the defendant may, on demand made before answer, have a change of place of trial to the proper county. The motion was supported by an affidavit in which was recited the residence of defendant in Union county. The motion was resisted by plaintiff, reliance being placed on Code, section 3500, which provides that, when a corporation has an office or agency in any county for the transaction of business, any action growing out of or connected with the business of that office or agency may be brought in the county where such office or agency is located. Affidavits addressed to the subject pro and con were filed by the respective parties. We shall not attempt a rehearsal of the averments thereof. It is sufficient to say that for some time before the making of the contract in question, and during the period of time mentioned therein, Harry N. Rex resided and was doing business as a coal operator in Appanoose county. A finding was warranted that the negotiations for the contract were conducted by him, and at least twenty-eight of the four hundred cars of coal were delivered on his order before the written contract was signed up. This accounts for the fact that the contract was drawn to cover deliveries previously made. The further finding was warranted, that after the making of the contract the coal was delivered by plaintiff at Cincinnati and billed in accordance with orders given by said Rex, and it was Rex who stopped the making of deliveries. Here was sufficient to base a conclusion that Rex was representing the company of which he was secretary in Appanoose county in the making of the contract with plaintiff and in the matter of the execution thereof. This was sufficient to establish an agency within the meaning of the statute; and the mere fact

1. ACTION AGAINST A CORPORATION: place of trial.

that payments were to be made from the office of defendant in Union county would not have the effect to destroy the agency created by it in Appanoose county. *Ockerson v. Burnham,* 63 Iowa, 570; *Locke v. Chicago, etc.,* 107 Iowa, 390. It follows that the motion was properly overruled.

II. The defendant denies that the contract was breached by it. And the assertion is made on its behalf that it was at all times ready to receive the coal and pay therefor in accordance with the contract; that the default was with the plaintiff in not making delivery. The trial court found otherwise, and, following a well-settled rule, the finding must be given effect as of a verdict of a jury.

2. APPEAL: finding of court: effect.

The finding had ample warrant in the evidence. That Harry N. Rex was acting in the premises for and on behalf of defendant seems to be made clear by the evidence. A member of the plaintiff firm testified that by direction of said Rex deliveries were to be made only when called for; that he repeatedly advised Rex of the readiness of his firm to make deliveries, and complained because the same were not called for as contemplated in the contract; that on many of such occasions his complaints drew out no more than the laconic reply, "Wait until I get ready." And it is in evidence that matters ran along thus until the day before the expiration of the contract period, when Rex arbitrarily demanded a delivery on the following day of the whole number of cars — being as we have seen one hundred and thirteen — remaining undelivered. Coupled with this demand was a statement that unless a delivery in full was made none would be then or thereafter accepted. The court might well conclude that the demand so made was not in accordance with the contract, that within the knowledge of Rex it was impossible for plaintiff to comply therewith, and that it was not made in good faith. We need not go into the evidence more in detail. It is enough

3. CONTRACTS: breach: evidence.

that the finding of the court for a breach by defendant had warrant.

III.    The only remaining question in the case necessary to be considered has relation to the measure of plaintiff's damages.    The evidence tended to show that by the custom existing among coal operators and dealers, and known to defendant, contracts for fall and winter delivery are quite universally made in in the summer.    And that, as matter of fact, unless so made it is difficult for an operator to find a market for the product of his mine; further, that plaintiff, in reliance upon the contract with defendant, contracted with others only to the capacity of its mines, and in addition to its loss of sale to defendant, and as a necessary consequence, it was compelled to abandon operation to the extent or in the proportion that the one hundred and thirteen cars bore to the capacity of its mines.    The trial court found that the undelivered coal would amount to two thousand eight hundred and sixty-two tons, and plaintiff's damage was found by deducting from the contract price the average cost of mining coal — and this, we take it, included the value of the unmined coal as well as all matters of labor, expense, etc. — which would leave thirty-five cents per ton, or $901.70 in the aggregate, and judgment was rendered for that sum.    Therein we think was no error.    The rule adopted has express approval in the English case of *Silkstone, etc., Co. v. Coal Co.*, reported in 35 Law Times Reports, 668.    There the facts in all material respects were identical with those presented by the case at bar, and the rule here adopted by the trial court was given application.    So, too, we think that the case should be ruled by *Kimball v. Deere,* 108 Iowa, 676.    There the subject of the contract was scales, and it was said that, " where a purchaser of an unmanufactured article refuses to accept it, the manufacturer is not bound to complete it, make a tender of it, and on the purchaser's refusal to accept to sell it on the market.    He may recover the difference between

4. BREACH OF
CONTRACT:
measure of
damages.

the cost of making the article and the price agreed to be paid for it." We perceive no good reason for making a distinction between an article to be manufactured and coal to be dug from the mine. Each requires the expenditure of time, money, and labor to put it in form for delivery in satisfaction of the contract stipulating for its production.

Finding no error in the judgment, it is *affirmed*.