E. O. KABRICK, Appellee, v. J. I. CASE THRESHING MACHINE COMPANY, Appellant.

**VENUE:** Office or Agency—Traveling Salesman. An action growing out of a sale of machinery may be brought in the county where it was consummated by defendant's duly authorized traveling agent, especially when the agent resided in said county and the notes were made payable in said county. Section 3500, Code, 1897.

SALES: Delivery—Intent—Conduct of Parties, etc.  Evidence, consisting of writings and course of conduct of the parties, reviewed, and held not to show delivery of property to the purchaser.

SALES: Rescission—Acceptance—Acts of Ownership—Effect.  Acts of ownership, exercised by the purchaser in ignorance that the property would not be delivered to him, are no obstacle in the way of rescission, and recovery of the price paid.

*Appeal from Clay District Court.*—N. J. LEE, Judge.

MONDAY, JUNE 25, 1917.

ACTION at law to recover the purchase price of a secondhand threshing outfit.  Judgment for plaintiff.  Defendant appeals.—*Affirmed.*

*Parsons & Mills* and *J. W. Cory & Son,* for appellant.

*Heald & Cook* and *Faville & Whitney,* for appellee.

STEVENS, J.—On June 11, 1914, appellant, through its agent F. E. Kabrick, sold a threshing separator, engine and other machinery, to William Rohde, who resided near Rock Rapids, Clay County, Iowa.  William Rohde was, at the time, the owner of an old separator and engine, which appellant agreed to take as part payment on the purchase price of the new machine.  On June 20th, E. O. Kabrick signed an order, in which he agreed to purchase of appellant the secondhand separator, engine and other machinery above referred to, and to execute two notes therefor, one for $220, due October 1, 1914, and one for $216, due October 1, 1915, at 7 per cent interest.  The order was given subject to the approval of appellant.  The company accepted the order on June 30, 1914.  The new machinery was delivered to Rohde about July 29, 1914.  The machinery, at the time of all the transactions above referred to, was situated upon the farm of Mr. Rohde, about 3 miles from Rock Rapids.  Appellee did not go to see the machinery

before purchasing the same. On August 1, 1914, appellee executed the notes referred. to in his written order for the purchase price of the old machinery, together with a chattel mortgage on the old machinery to secure the payment thereof, and, on October 1, 1914, to obtain a discount, paid both notes in full.

Some time later, the brother, who had conducted the negotiations for the sale of the new machinery to Rohde and the old machinery to appellee, also undertook to sell the secondhand machinery for appellee; but, upon taking a purchaser to the premises occupied by Mr. Rohde, he was informed by him that he would not part with the possession of the old machinery until the company adjusted some difference between them arising out of the purchase of the new machinery. The controversy between Rohde and appellant continued for some time, and, on January 11, 1915, appellee had his attorneys notify appellant that, because he was unable to get possession of the machinery which he had purchased, he elected to, and did, rescind the contract, and demanded the repayment to him of the money which he had paid appellant therefor. The bill of sale executed by Rohde, conveying the secondhand machinery to appellant, provided for the delivery of the machinery to it, loaded, without charge, on the cars at Rock Rapids, Iowa.

Upon receipt of the letter of January 11th, rescinding the contract for the purchase of the secondhand machinery, the manager of defendant at Des Moines wrote a letter to appellee's attorneys, declining to return the purchase price received from appellee therefor. On January 11, 1915, a representative of appellant called upon Mr. Rohde and adjusted the difficulties between appellant and him, and received an agreement signed by Rohde, agreeing to deliver the secondhand machinery according to his bill of sale. On June 5, 1915, appellant, through the manager of its

branch house at Des Moines, Iowa, wrote a letter to Rohde, demanding the sum of $1,142, representing the value of the old outfit taken in trade. This demand was based upon the alleged refusal of Rohde to deliver the machinery on board the cars at Rock Rapids free of charge.

This action was brought in Clay County to recover the money paid for the old machinery. The cause was tried to a jury, but, at the conclusion of the testimony, both parties having moved for a verdict, by agreement the jury was discharged, and the cause submitted to the court, which found in favor of the plaintiff, and rendered judgment against the defendant for the amount claimed by plaintiff.

I. Appellant asked a change of venue, on the ground that it had no office or agency in Clay County, supporting the same by the affidavit of the manager of its branch house at Des Moines, Iowa, from which point distribution of sales made by its traveling representatives was made throughout the state. The motion was overruled, and this ruling is assigned as error.

1. VENUE: office or agency: traveling salesman.

F. E. Kabrick was the agent of appellant, and traveled from place to place in the state selling its machinery. The sale of the new outfit to Rohde, and of the secondhand machinery to appellee, was made in Clay County. F. E. Kabrick resided in Clay County, and the notes given by appellee were made payable at a bank in Spencer, Iowa. It is not claimed that appellant had an office in Clay County or other agency than that of F. E. Kabrick. Section 3500 of the Code provides that suits may be brought in any county in which the defendant has an office or agency for the transaction of business, where the suit grows out of, or was connected with, the business of that office or agency. The evidence showed that F. E. Kabrick was the agent for appellant, having authority to solicit orders for new, and to sell the old, machinery, and that he conducted the nego-

tiations in Clay County for appellant in both transactions, and, under the holding of the following cases, the action was properly brought in that county. *Milligan v. Davis*, 49 Iowa 126; *Locke v. Chicago Chronicle Co.*, 107 Iowa 390; *Goodrich v. Fogarty*, 130 Iowa 223; *Thistle Coal Co. v. Rex Coal & Mining Co.*, 132 Iowa 592; *Gilbert v. McCullough*, 140 Iowa 362.

II.    The theory and claim of appellant

2. SALES: delivery: intent: conduct of parties, etc. are that appellee agreed to accept the outfit where it was at the time the order was given, and that no further act of appellant was necessary to complete the delivery. On the other hand, appellee sought to rescind the contract of sale, on the ground that appellant had wholly failed to deliver the outfit, or place the same at his disposal, and that Rohde refused to deliver it or permit appellee to remove the same from his premises. This is the only remaining question presented upon this appeal, and is one of fact rather than of law, and depends for its answer largely upon the intention of the parties, which is to be ascertained from the written instrument and other facts and circumstances appearing in evidence.

"When and where the sale was complete and title to the property passed to the purchaser is largely a question of intent, to be drawn not alone, necessarily, from the writings made or the formal words employed, but also from the conduct of the parties and their methods of dealing. The answer to the question is nearly always a conclusion or inference to be drawn from a consideration of all the circumstances developed by the evidence, and is therefore a question of fact for the jury and not of law for the court." *Hamill v. Joseph Schlitz Brewing Co.*, 165 Iowa 266.

The bill of sale executed by Rohde, referring to the matter of delivery, stated: "Above machinery to be loaded

on cars free of charge subject to order of J. I. Case T. M. Co., Rock Rapids, Iowa."

The order given by appellee for the secondhand outfit, which was subject to acceptance by appellant, recited:

"You will please deliver on or before the 'at once' or as soon thereafter as you can furnish for transportation or deliver to 'These goods will be accepted where they stand.' "

It appears from the evidence that the secondhand outfit was in possession of Rohde at the time he entered into the contract for the purchase of the new outfit, and also at the time of the execution of the bill of sale, and when the written order was signed by appellee and accepted by appellant.  The new outfit was delivered to Rohde in the latter part of July, and, some time thereafter, a controversy arose between him and appellant respecting the new machinery, and thereafter, Rohde refused to permit a prospective purchaser of the secondhand outfit to remove the same from his premises.  Rohde, however, testified that, after the execution of the bill of sale, and prior to the time the controversy arose between himself and appellant, he would have permitted appellee to take possession of the old outfit, had he sought permission to do so.  It is not quite clear from the record when the controversy arose between Rohde and appellant regarding the new machinery, but the court may well have found from the testimony that it was near the first of August.  He testified that he would not have permitted the machinery to be removed from his premises after the controversy arose.  In compliance with the terms of the written order signed by appellee, he executed the two notes and mortgage to secure the payment thereof, and, on or about October 1st, when one of the notes fell due, paid both of them.  Up to this time, he had not been to see the machinery, nor had he at any time requested possession thereof.

Appellee testified that he understood that the machinery was to be delivered to him at Rock Rapids, and introduced in evidence a letter written by appellant's manager at Des Moines, dated June 30, 1914, in which he was advised of the acceptance of his order for the secondhand outfit, and that "Same is to be delivered to you by your brother, rig being on hand at Rock Rapids." The conduct of the parties after the attempted rescission of the contract throws some light upon their apparent intention as to the matter of delivery at the time the contract was entered into. E. O. Kabrick testified that, after the final refusal of Rohde to permit the machinery to be taken from his premises by one of appellee's prospective purchasers, he thereafter, on December 19, 1914, talked over the telephone with appellant's manager at Des Moines, who agreed to write a letter to Rohde demanding that he comply with his contract, and directing the witness to go to Rock Rapids and demand that Rohde deliver the outfit at Rock Rapids according to his bill of sale. He further testified that he did go to Rock Rapids, and that Rohde refused to deliver the outfit as requested.

On June 5, 1915, a letter was written from appellant's Des Moines office to Rohde, calling his attention to the fact that he had agreed, by his bill of sale, to deliver the old machinery at Rock Rapids, loaded on the cars, subject to the order of appellants, and, as he had failed to do so, demanding the payment of $1,142, which he claimed to be the value of the old outfit. On January 11, 1915, Rohde signed a statement in which he agreed to make delivery of the secondhand machinery in accordance with the terms of the bill of sale. At the bottom of the signed statement appears the following notation, made by the representative of appellant: "I recommend the delivery to be made where it now stands."

The above is substantially a full statement of the evi-

dence bearing upon the question involved. It was evidently contemplated by the representative of appellant, at the time the bill of sale was executed by Rohde, that it might be necessary to ship the secondhand outfit to some other point than Rock Rapids, and the provision in the contract was made requiring Rohde to deliver the same loaded on the cars at Rock Rapids. This provision in the bill of sale is not, however, necessarily inconsistent with the claim now made by appellant that appellee agreed to receive delivery of the outfit at the Rohde premises. It was a provision for the benefit of the company, which it could, of course, waive.

Counsel for appellant in argument place much stress upon the following provision of the order signed by appellee: "These goods will be accepted where they stand." The contention is that this provision of the contract bound appellee to receive the goods on the premises, and that, under the terms of the bill of sale executed by Rohde, he had a right to take possession of the outfit in question. The language, however, is apparently susceptible of another construction; that is, that it was intended to designate the place of delivery only. This is apparently the construction appellant placed upon this language, as is evidenced by its letter of June 30, as follows: "Same to be delivered to you by your brother, rig being on hand at Rock Rapids." Evidently the writer of this letter understood that delivery of the machinery had not been completed, and that some further act was necessary to complete the same. It is quite clear that the words were not intended at the time as an agreement on the part of appellee to treat the outfit as delivered, because the order was subject to the approval of appellant, and no delivery could have been contemplated until after the appellant had signified its acceptance of the order.

Appellant emphasizes the fact that appellee executed the notes and mortgage and paid the same; that he sought to exercise acts of ownership over the property by offering and attempting to sell it; that he thereby treated the outfit as having been delivered to him, and that, by reason thereof, he is estopped from rescinding the contract. However, it is quite evident that, at the time of the execution of the note and mortgage and the payment thereof, appellee did not know or have reason to anticipate that Rohde would refuse delivery or interfere with his taking possession of the machinery. Rohde had possession of the outfit for appellant at the time the order was given and accepted by it, and appellee was prevented from obtaining possession, after the notes were executed and paid, because of some alleged failure of appellant's to carry out the terms of the contract with Rohde. We do not think, under the facts disclosed, that there was a delivery of the outfit, or that appellee was estopped, by reason of any of the matters shown, from maintaining this suit.

3. SALES: rescission: acceptance: acts of ownership: effect.

The questions of fact were for the court, and its finding thereon has the force and effect of the verdict of a jury. The court, having the witnesses before it and having heard all the testimony, found the facts in favor of appellee, and, as the inferences necessary to such finding are justified by the evidence, the court's finding should not be disturbed.— *Affirmed.*

GAYNOR, C. J., WEAVER and PRESTON, JJ., concur.