ROLAND TUTTLE, Appellee, v. NICHOLS POULTRY & EGG COMPANY et al., Appellants.

No. 47366.

(Reported in 35 N. W. 2d 875)

200

February 8, 1949.

Hicklin & Hicklin, of Wapello, and Hoegh & Meyer, of Chariton, for appellants.

A. V. Hass, of Chariton, for appellee.

Garfield, J.—Plaintiff, Tuttle, a farmer in Lucas county, sold 5000 turkeys raised by him to defendants through their alleged agent Byers. Defendant Nichols Poultry & Egg Company is a trade name under which defendants Merlin L. Nichols and Charles H. Nichols engage in business as partners. Merlin, the son, resides in Avon, Illinois, where one of their plants is located. Charles, the father, is a resident of Louisa County, Iowa, where they have another place of business. Byers, the alleged agent, lives in Chariton, Lucas county.

In this action plaintiff seeks to recover the agreed purchase price of about 2000 of the turkeys, to establish and foreclose a lien therefor and other equitable relief. On the theory that Byers was defendants' agent and the action grew out of or was

connected with the business of such agency, the action was brought in Lucas county. Defendants Charles H. Nichols and the partnership moved to change the action to Louisa county. (See Rule 175, Rules of Civil Procedure.) Defendants tell us in argument that Merlin orally joined in this motion. Most of defendants' brief and argument is devoted to the claimed error in overruling this motion.

Section 616.14, Code, 1946, which plaintiff contends permits venue in Lucas county, provides: ·

"When a corporation, company, or individual has an office or agency in any county for the transaction of business, any actions growing out of or connected with the business of that office or agency may be brought in the county where such office or agency is located."

I. We cannot agree with defendants' contention that no agency in Lucas county was shown. From the record upon which the change of venue was denied, it appears that Byers lived and maintained a warehouse in Chariton and was engaged in the feed and produce business in southern Iowa. In February 1946, Byers was told by Merlin Nichols who dealt for the partnership they would like to have him buy turkeys for them the following fall in the part of Iowa where Byers was doing business.

In September 1946, Merlin telephoned Byers from Avon, Illinois, and asked whether there were turkeys in the territory Byers covered that could be bought for Nichols Poultry & Egg Company, saying they wanted to process as many as could be obtained. Byers replied he thought turkeys could be bought for them there and Nichols said he would come to Chariton in regard to the matter.

A day or two later Merlin came to Chariton and it was agreed in some detail Byers was to buy turkeys in that vicinity for the partnership at a price to be fixed by Nichols and supervise loading them in their trucks. Byers was to receive a commission of one-half cent per pound for finding, buying and supervising loading the turkeys and furnishing necessary help in so doing.

Byers and Nichols then went to the farm of one Taylor

where Byers purchased a large number of turkeys for Nichols at a price authorized by the latter. Nichols' trucks were later sent from Avon to get the Taylor turkeys. Byers supervised loading them and received his agreed commission of one-half cent a pound on the transaction.

After purchasing Taylor's turkeys Byers and Merlin drove to Corydon to interview one Grismore. Nichols told Grismore Byers was buying turkeys for his company in that area, whatever arrangements Byers made for purchasing Grismore's turkeys would be satisfactory with them and asked Grismore to contact Byers when his turkeys were ready for market.

Early in October 1946, Byers purchased for defendants 5000 turkeys from plaintiff, Tuttle, at a price authorized by Nichols. Between October 10 and 15, Nichols' trucks picked up about 3079 of these turkeys. Byers supervised loading them and received his agreed commission. Tuttle was also paid for the 3079. When Nichols' trucks did not return for the rest of Tuttle's turkeys Byers telephoned Merlin at Avon who said he did not have the money to pay for them because of the condition of the market and the number of turkeys he had in storage.

On November 4, Byers and Tuttle went to Avon to see Nichols who agreed to send his trucks for the rest of Tuttle's turkeys. This was done and Byers was paid the remainder of his agreed commission upon the entire transaction. Because Tuttle did not receive his pay for the rest of the turkeys he and Byers again went to Avon to see Merlin the day after Thanksgiving.

On December 16, Nichols instructed Byers to inform Tuttle the rest of his turkeys were in storage and belonged to him (Tuttle) and "I [Nichols] will take it from there." Two days later Tuttle with his attorney and Byers went to Chicago to talk to Nichols. Plaintiff's petition herein was filed December 26. Notice was served on both Charles and Merlin Nichols in Iowa. Charles was served on December 27.

While some of the above matters are disputed there is ample support for them in the record. The trial court evidently found the facts substantially as we have stated them and we

are disposed to accept them as true. From these facts there is little doubt Byers was the agent of defendant partnership from sometime in September at least until December 16 and such relationship under the record here constituted an agency in Lucas county for the transaction of partnership business within Code section 616.14. See as bearing on this question Lake v. Western Silo Co., 177 Iowa 735, 739, 158 N. W. 673, and citations; Morey v. Standard Separator Co., 174 Iowa 530, 535, 156 N. W. 719, which involves a somewhat similar statute now superseded by Rule 56(g), Rules of Civil Procedure.

II. It is not contended this action does not grow out of or is not connected with the business of the agency within the meaning of section 616.14. However defendants argue that any agency was terminated before this action was commenced and therefore venue in Lucas county does not lie. The trial court found the agency was terminated, apparently about eight to ten days before this suit was started, but held this did not prevent venue in Lucas county. While termination of the agency prior to commencement of this action does not clearly appear, we will assume, without deciding, such is the fact.

Under our decisions termination of the agency prior to commencement of action does not prevent venue under section 616.14 in the county where the agency was located. We are cited to no decision that the statute should be construed as defendants contend. They argue the provision the action "may be brought in the county where such * * * agency is located" means "is located when the action is commenced." The effect of our decisions is the provision means "is located when the business out of which the action grows takes place." We therefore affirm the trial court's holding that venue lies in Lucas county.

In Syndicate Clothing Co. v. Garfield, 204 Iowa 159, 166, 214 N. W. 598, 601, after reviewing numerous decisions under what is now section 616.14, we said: "It may be observed from the foregoing decisions that the applicable rule as to third persons, dealing through an agency, even though it be of a transitory nature, and only for a short duration, has been construed quite liberally on behalf of such third persons."

To much the same effect see Gilbert v. McCullough, 140 Iowa 362, 364, 118 N. W. 511; Morey v. Standard Separator Co., supra, 174 Iowa 530, 536, 156 N. W. 719. Indeed Code section 4.2 requires that 616.14 "shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice."

Milligan v. Davis, 49 Iowa 126, 129, is an early case which considers what is now section 616.14. It was an action for breach of warranty in the sale of a threshing machine purchased through a dealer in Crawford county. Venue in that county under the statute was held proper. The opinion states: "The agent and agency existed for the transaction of business where the agent was located for the time being, and this suit arose 'out of' the business of that 'agency,' and was, therefore, properly brought in Crawford county."

In Ockerson v. Burnham & Co., 63 Iowa 570, 572, 19 N. W. 676, 677, an agent sued his principal in Montgomery county, where the agency was located, for wrongful discharge. We rejected the contention venue would not lie for the reason the agency had been terminated when suit was brought. This from the opinion is controlling here:

"Counsel for defendants urge that the relation of principal and agent had been terminated by the discharge of plaintiff from the employment of defendant when the suit was brought. Let this be admitted. Yet the fact does not affect the result. The statute quoted does not limit the right to commence the suit in the county where the agency is located to the time during which the agency exists. The character of the business, and not the continuance of the agency, determines the right."

Tracy v. Liberty Oil Co., 208 Iowa 882, 885, 886, 226 N. W. 178, comments that the record in Ockerson v. Burnham & Co., supra, discloses an admission by defendant that it had an agent in Montgomery county when the action was commenced. Because of this statement we have carefully studied the abstracts, briefs and arguments in the Ockerson case. They reveal that defendant did appoint an agent, Hanson Brothers, at Stanton in Montgomery county about the time plaintiff, who

lived in Red Oak, was discharged. However defendant strenuously argued that Hanson Brothers was appointed for a different purpose than plaintiff was and that the action did not grow out of nor was it connected with the business of the Hanson agency.

We quote from the argument of Burnham & Co.:

"The court erred in not finding that * * * this suit did not grow out of, nor was it connected with the business of any office or agency located in said county, at the time of the commencement of this suit. * * *

"So that at the time of the commencement of the suit the plaintiff was not the agent of the defendants. * * * Nor did this suit, by any forced construction grow out of, nor was it connected with the business of the agency of Hanson Brothers. * * *

"It seems absurd to claim that plaintiff, who was the agent of defendants, can, after his discharge, commence suit against his principal in the county where the agency *was* located; such is not the language of the statute, but such seemed to be the view of the Circuit Court."

We rejected the above argument. Venue in Montgomery county was upheld on the ground the contract *between plaintiff and defendant* created an agency for the latter in Montgomery county and this action grew out of or was connected with the business of *that agency*. To quote further from the opinion: "It cannot be doubted that this action grows out of or is connected with the business of the agency established *by the agreement between the parties*." (Italics added.)

The subsequent agency of Hanson Brothers at the time the Ockerson suit was commenced would not authorize venue in Montgomery county unless the action grew out of or was connected with the business of that agency. The Ockerson opinion does not mention the agency of Hanson Brothers, very likely because of defendant's argument the action did not grow out of nor was it connected with the business of that agency. The decision must be accepted as opposed to defendants' contention here.

In Gilbert v. McCullough, supra, 140 Iowa 362, 364, 118

N. W. 511, 512, we observe that to come within this statute an agency need not be permanent and "An action for compensation alleged to be due the agent comes within the statute. Ockerson v. Burnham, 63 Iowa 570."

Kabrick v. J. I. Case Threshing Mach. Co., 180 Iowa 598, 601, 602, 163 N. W. 368, 369, was an action to recover the purchase price of a used threshing outfit plaintiff had purchased from defendant through its agent, plaintiff's brother, in Clay county. We held venue in Clay county was proper. The abstract of record (to use the term then in effect) shows plaintiff's brother, defendant-appellant's only agent in Clay county, ceased acting as such about two and one-half months before action was commenced and that plaintiff claimed only there was an agency at the time of his purchase. We quote from the opinion: "* * * F. E. Kabrick was the agent for appellant, having authority to solicit orders * * * he conducted the negotiations in Clay county for appellant in both transactions, and, under the holding of the following cases, the action was properly brought in that county." Milligan v. Davis, supra, 49 Iowa 126, Gilbert v. McCullough, supra, 140 Iowa 362, 118 N. W. 511, and other decisions are cited.

In Babb v. Herring Motor Co., 193 Iowa 794, 811, 812, 186 N. W. 672, somewhat like Ockerson v. Burnham & Co., supra, plaintiff recovered certain commissions due him under a written agency contract with defendant and the Ford Motor Company for a period which ended before suit was started. Venue in Clarke county was upheld because of plaintiff's agency for defendant out of which this action arose. The opinion (page 806 of 193 Iowa, page 677 of 186 N. W.) reveals that defendant-appellant ceased acting as a Ford agent soon after the two-year period and the abstract of record discloses plaintiff did not act in such capacity for two years before suit was started. Plaintiff's argument shows it was contended action need not be brought during the continuance of the agency. The opinion states:

"It is appellant's contention that defendant is not a resident of Clarke County, and has no agent therein * * *. Plaintiff claims that defendant had an office and agency in Clarke County for the transaction of business, and that this suit grows

out of and is connected with the same. * * * We think the following cases sustain the trial court's ruling: [three decisions are cited including Ockerson v. Burnham & Co., supra]."

Farmers Sav. Bk. v. Planters Terminal Elevator Co., 200 Iowa 434, 436, 437, 204 N. W. 298, 299, was an action for fraud on the part of one Burdette in the sale to plaintiff of a promissory note taken by Burdette for stock in defendant company. When plaintiff purchased the note Burdette was staying at a hotel in Osceola, Clarke county, and selling stock in defendant corporation. We held it could be sued in Clarke county because of the agency of Burdette at the time the note was purchased and the connection of the cause of action with the business of such agency. The abstract of record reveals the suit was not commenced for more than two and one-half years after the note was purchased and no claim was made that defendants had an agency in Clarke county when suit was brought. Plaintiff argued that action need not be commenced while the agency is being maintained. We accepted such argument in this language from the opinion:

" * * * the affidavits tend to show that, at and about the time plaintiff bank bought this note from Burdette, Burdette was staying at a hotel in Osceola, and was engaged in selling stock in the defendant elevator company. * * *

" * * * the plaintiff's counter affidavits show that Burdette was an agent of the Planters Terminal Elevator Company and Parrott in the sale of this stock, and was authorized to take notes therefor and to sell said notes. * * * there was no error in refusing to transfer the case to Polk County."

Hawbaker v. Laco Gas Burner Co., 210 Iowa 544, 231 N. W. 347, is much like Ockerson v. Burnham & Co., supra, 63 Iowa 570, 19 N. W. 676, and Babb v. Herring Motor Co., supra, 193 Iowa 794, 186 N. W. 672. Hawbaker sued to recover commissions due him under a written agency contract upon sales made in Dallas county in his sales territory. We held it was settled by the two decisions last cited and others that plaintiff could bring the action in Dallas county. The abstract of record discloses that plaintiff testified he did nothing under

the agency contract for one and one-half months before suit was started.

Other decisions which bear upon the question under consideration include Wilson v. Lindhart, 216 Iowa 825, 829, 249 N. W. 218; Goodrich v. Fogarty, 130 Iowa 223, 227, 106 N. W. 616; Locke v. Chicago Chronicle Co., 107 Iowa 390, 78 N. W. 49.

It is apparent we have gone further in some of our cases in sustaining venue under section 616.14 than we are asked to go here. To hold that termination, if there was such, of the agency of Byers about ten days before this suit was started prevented plaintiff from bringing it in Lucas county would be contrary to the uniform trend of our decisions.

Pertinent here is this language from Gilbert v. McCullough, supra, 140 Iowa 362, 364, 118 N. W. 511, 512, after a less extensive review of some of our prior cases than we have here undertaken: "Without considering whether as an original question we would be inclined to go to the extent of some of these precedents, we are not disposed to unsettle the rule which they have established."

III. We find no merit in the contention that in any event only the partnership as such and not its two members could be sued in Lucas county. The partnership could have been sued in the names of the individual partners without joining the partnership as such. Indeed at common law partners could not be sued in the firm name but only in their individual names. Markham v. Buckingham, 21 Iowa 494, 496, 89 Am. Dec. 590, and citations; 40 Am. Jur., Partnership, section 434; 47 C. J., Partnership, section 471; annotation 100 A. L. R. 997.

Under Rule 4, Rules of Civil Procedure, and the statute superseded by the rule actions may be brought by or against partnerships as such or against any or all partners with or without joining the firm. Plaintiff saw fit to bring this action against the partnership in the names of the individual partners and by joining the firm. This was authorized by the rule and the superseded statute long in effect. Anderson v. Wilson, 142 Iowa 158, 163, 120 N. W. 677. See also Weaver v. Carpenter,

42 Iowa 343, 349; 40 Am. Jur., Partnership, section 435; annotation 100 A. L. R. 997, 1009.

IV. On the merits defendants' sole contention is the trial court erred in not finding there was a novation orally effected between plaintiff and Merlin at the November 4 meeting in Avon. It is claimed and Merlin testified it was then orally agreed that defendants' trucks should transport the remaining 2000 turkeys to Avon and dress, process and place them in cold storage for plaintiff's account; defendants would borrow eighty per cent of the value of the turkeys and advance such sum to plaintiff; defendants would try to sell the turkeys and when they did so they were to receive six cents per pound for transportation and processing and the rest of the proceeds was to be paid plaintiff.

Plaintiff denies there was a novation and says there was only an extension of time to pay for the 2000 turkeys. His testimony, corroborated by Byers, is that on November 4 Merlin admitted the rest of the turkeys were his (Nichols') and said he had never backed out of a deal but was unable to pay for them then because of the decline in the market and the large number of turkeys they had on hand, he would get the turkeys in his trucks and process them, pay plaintiff eighty per cent of what was owing him from the proceeds of a loan defendants would obtain and pay the remaining twenty per cent as soon as they could sell enough turkeys. Plaintiff says he consented to that method of payment.

The trial court accepted plaintiff's and Byers' version and held the evidence was insufficient to establish extinguishment of the original contract. When we give such holding the weight to which it is entitled we are unable to reach a contrary conclusion.

 A novation results from the substitution of a valid new contract between the parties to a previous valid obligation with intent to extinguish the old obligation. Perhaps the most essential element is the intention of the parties that the existing debt be extinguished by the new obligation. See In re Estate of Eitzen, 231 Iowa 1169, 1175, 1176, 3 N. W. 2d 546, 549, 550, and citations; Richardson v. Short, 201 Iowa 561, 565, 207

N. W. 610; 46 C. J., Novation, sections 1 and 29. The burden of proving the claimed novation by sufficient evidence rested on defendants. In re Estate of Eitzen, supra, and citation; 46 C. J., Novation, section 72.

Since this claimed erroneous holding on the issue of novation is the only proposition defendants argue on the merits we must assume other contentions have been waived and plaintiff is entitled to prevail unless a novation has been established. See Valley Sav. Bk. v. Staves, 224 Iowa 1197, 1198, 278 N. W. 346; Ettinger v. Malcolm, 208 Iowa 311, 313, 223 N. W. 247; Rule 344(a)(4)(Third), Rules of Civil Procedure.

Defendants argue the trial court ignored the testimony of Adkins and Lemmon which it is said corroborates Merlin's version of the November 4 conversation. It is true the court's opinion does not mention the evidence of these two employees of defendants. But it does not follow their testimony was ignored. In any event we have carefully considered all the evidence.

Adkins and Lemmon were in Nichols' office when plaintiff and Byers came there on November 4. However it appears without dispute that at Nichols' suggestion he, plaintiff and Byers went to the Country Club to confer. Adkins and Lemmon did not accompany them. Nichols himself testified "the general features of the arrangement" with plaintiff were made at the Country Club, "that is where the matter was principally discussed." Except that Adkins testified the turkeys were to be stored "to Mr. Tuttle's account" there is little in the testimony of Adkins or Lemmon necessarily inconsistent with plaintiff's and Byers' version of the arrangement made on that day.

In this connection, a letter from Merlin to Byers on November 14 tends to support plaintiff's claim it had not been agreed the turkeys were to be stored in plaintiff's name. The letter states, "As we were unable to obtain satisfactory loans on these turkeys we thought it best to store the turkeys for Mr. Tuttle's account." Further support for plaintiff's version is the admitted fact that defendants paid Byers a commission of one-half cent per pound on the remaining turkeys. Defendants conceded upon the trial they were in error in attempting to

charge this commission to plaintiff. Also it appears without dispute that before Tuttle and Byers left Avon on November 4, Merlin showed plaintiff a statement of defendants' financial condition. This is more nearly consistent with plaintiff's version that Nichols was asking plaintiff to consent to an extension of time of payment.

We do not overlook defendants' argument that the reason they first declined delivery of the 2000 turkeys is the claimed inferior quality of the Tuttle turkeys. It is not contended this constitutes a defense, but the evidence is said to detract from the credibility of Byers. We think defendants delayed their acceptance of the 2000 turkeys because of the decline in the market and the fact they had a large quantity on hand. Testimony of both Adkins and Lemmon supports this conclusion.

Adkins testified Nichols told plaintiff and Byers on November 4 "That he had turkeys on hand * * * more than he could handle, that the market was not too good and he did not want to take any more until he disposed of some he had." Lemmon's testimony is that "Nichols said * * * the market conditions were such that he could not sell them, that if conditions were good his storage holdings were heavy and he wasn't in condition to buy any more." Further, Merlin himself testified "There was a great difference in the quality of the last 2000 turkeys over the first 3000."

Further discussion of the facts seems unnecessary.—Affirmed.

MANTZ, C. J., and BLISS, OLIVER, WENNERSTRUM, SMITH, MULRONEY, and HAYS, JJ., concur.